Effie Lyle Whitney, Plaintiff, *v.* Whitney Elevator and Warehouse Company and Others, Defendants.

Supreme Court, Monroe County, September, 1923.

Gifts — corporate stock — transfer of stock by mother to infant daughter — divorced husband of mother, the president of the corporation and father of said infant, appointed attorney in fact to make the transfer upon the books of the company — issuance of new certificate in name of father as trustee — pledge of certificate by father as president and by directors of the corporation as security for debts of the corporation — redemption of certificate by directors and the holding of same to their own use — directors liable to plaintiff for the return of the certificate together with dividends paid.

Plaintiff in May, 1916, commenced this action to recover corporate stock and for an accounting. It appeared that in March, 1906, when plaintiff was about thirteen and one-half years of age, her mother assigned and transferred to her by the ordinary indorsement on the back of the certificates twenty-one shares of the capital stock of a corporation of which her divorced husband, the father of plaintiff, was president and in practical control. The father of plaintiff was appointed attorney in fact to make the transfer upon the books of the corporation, it being the mother's intention to make a gift of the stock to her daughter. Although plaintiff was present when the papers were signed it did not appear that the stock was actually handed to her, but immediately after the execution of said papers they were sent by plaintiff's mother to a friend, an employee of the corporation, for delivery to plaintiff's father for transfer. The certificates so assigned were surrendered within a few days and a new certificate for the same number of shares issued therefor in the name of plaintiff's father as trustee, but no certificate representing said stock was ever delivered to plaintiff and it was not until after the commencement of the action that she or her mother learned what had become of the certificates forwarded for transfer although plaintiff's mother made various inquiries as to their whereabouts. It also appeared that after the surrender of the old certificates the corporation delivered to one B. as collateral security for money borrowed from him, probably before June, 1907, the certificate which then stood in the name of plaintiff's father as trustee. After the death of B. in November, 1907, the debt to him was paid from the earnings of the corporation by its directors who took over said certificate and thereafter without consideration therefor to or for the benefit of plaintiff retained and held the shares which said certificate represented, to their own use. *Held*, that when plaintiff's father acting under his authority made the transfer of the old certificates and accepted the new one, all control and dominion over the stock by plaintiff's mother ceased and the gift was consummated in plaintiff beyond the mother's power to revoke.

In the circumstances the conclusive presumption arose that plaintiff's father received the new certificate only as trustee for plaintiff who forthwith became the owner of the shares represented by it, but assuming that as between the plaintiff and her mother the gift was not consummated yet as between plaintiff and the corporation and its directors there was a completed and perfected gift.

The corporation was entitled to rely upon its knowledge that its president was plaintiff's father and that she was then but an immature child, and in the absence

of unusual or suspicious circumstances the issuance of the new certificate to her father in form as trustee was fully justified and a charge of either fraud or conversion predicated upon the initial transaction could not be sustained against the defendant, but when later the corporation took over said certificate from the trustee and pledged it as collateral for its own debts, it placed itself outside the shelter of good faith.

The defendants having pleaded the ten years' Statute of Limitations as a defense the burden was upon them to show that the action was barred, but there being no proof upon the subject either way, the defense must fail.

Judgment directed in favor of plaintiff for a return of the twenty-one shares of stock together with the dividends or other profits earned or paid thereon to or for defendants, and in case the actual stock cannot be returned the defendants must account to plaintiff for the value thereof.

ACTION to recover corporate stock and for an accounting.

*Frank J. Hone,* for plaintiff.

*George P. Decker,* for defendant Whitney Elevator and Warehouse Company.

*McLean, Duffy & Kaelber,* for the other defendants.

SAWYER, J. March 20, 1906, Effie Lyle Whitney Johnson, by the ordinary indorsement upon the back of the certificates, assigned and transferred to her daughter, this plaintiff, twenty-one shares of the capital stock of the Whitney Elevator and Warehouse Company and appointed her divorced husband and plaintiff's father, James W. Whitney, who was also the president of the Whitney Elevator and Warehouse Company, as her attorney to make the transfer upon the books of the company.

Plaintiff, then a child about thirteen and one-half years old, was present when the papers were signed but it does not appear that the stock was actually handed to her; immediately after the assignments were executed, they were sent by Mrs. Johnson to a friend of hers in Rochester, who was also an employee of the elevator company, for delivery to Mr. Whitney for transfer. The certificates were surrendered to the elevator company upon March twenty-third and a new certificate, signed by Mr. Whitney, as president of the company, and one H. N. Howard, secretary, for twenty-one shares issued therefor in the name of James W. Whitney, trustee.

No certificate representing the stock was ever delivered to plaintiff and not until after the commencement of this action did either she or her mother learn what had become of those so forwarded for transfer, although various inquiries were made by Mrs. Johnson as to their whereabouts.

It further appears that some time between March 23, 1906, and the time of his death, which occurred on or about November

8, 1907, and probably before June 15, 1907, the Whitney Elevator and Warehouse Company had borrowed money from one Charles Backus and delivered to him as collateral security therefor the twenty-one shares in question, the certificate for which then stood in Mr. Whitney's name as trustee. After his death this debt was paid from earnings of the company by Mr. Naylon, Mr. Duffy and Mr. Perkins, who then were the directors of the company and who took over the certificate of stock and thereafter, without consideration therefor to or for the benefit of plaintiff, retained and held the shares which it represented to their own use and ownership.

The action is brought to recover the stock together with an accounting for the dividends and other profits received by defendants thereon.

While the complaint refers to the assignment to plaintiff as a sale, it was, in fact, intended as a gift from the mother to her daughter. Defendants urge that the delivery necessary to make effective a gift *inter vivos* was not had and that in consequence plaintiff has no status before the court. If this contention is to be sustained, it would require the court to hold that it was necessary for Mrs. Johnson to actually place the certificates in the hands of her little daughter and then retrieve and send them on to the company for transfer. So absurd a proposition answers itself. Unquestionably there must have been a delivery to effectuate the intention but any act which finally ended Mrs. Johnson's control and vested it absolutely in the daughter was sufficient for the purpose. There may be force to the argument that at any time before the transfer was actually made and the new certificate delivered to Mr. Whitney as trustee, Mrs. Johnson might have rescinded the power given him and recalled the assignments. However this may be, when he had acted under his authority, made the transfer and accepted the new certificate all her control and dominion over the stock ceased, and the gift was consummated in her daughter beyond her power to revoke. The assignments ran to " Miss Effie Lyle Whitney," but instead of issuing the new certificate to her by that name her father, as president of the company, issued it to himself in his own name as trustee and under the circumstances is conclusively presumed to have received it only as trustee for his daughter who forthwith became the owner of the shares. Furthermore upon an assumption that, as between her mother and herself, the gift was not consummated in the daughter, as between her and these defendants, there is, nevertheless, ample authority for holding that it was a completed and perfected gift. *Francis* v. *N. Y. & B. El. R. R. Co.,* 108 N. Y.

93. The later violation of his trust by Mr. Whitney presents an entirely different question. So far as the initial transaction is concerned his good faith is not disproved and a charge of either fraud or conversion predicated upon it cannot be sustained against the defendants. The company was entitled to rely upon its knowledge that Mr. Whitney was plaintiff's father and that she was then but an immature child. He was one of her natural guardians and it is common knowledge that parents, for convenience of handling, frequently deposit moneys and take securities belonging to their infant children, in their behalf, but in their own names as trustees and without additional words defining the trust; in the absence of unusual or suspicious circumstances the issuance of the certificate in that form was fully justified. When, however, it later took over from Mr. Whitney the certificate in question and pledged it as collateral for its own debt, the defendant company placed itself outside the shelter of good faith.

Mr. Whitney was not only the president of the company but was practically the company. He was its active managing as well as its titular head. Through him it had knowledge that he was not individually the owner of the shares the certificate represented, but held them only in trust for his daughter. When it diverted them from that ownership to its own purposes it wrongfully converted them from her and, when it later paid the loan and released them from the pledge, its then directors assumed for themselves the conversion by taking individual possession and thereafter retaining them as their own.

The contract with Mr. Whitney, under which those directors came into control of the company, is not overlooked, but, at best, they could under it take nothing more than he owned. While the apparent situation was such that, until they were put on guard by facts indicating the contrary, they might reasonably assume stock standing in his name as trustee belonged to him personally, that assumption was always subject to defeat by proof of its real ownership, with knowledge of which those directors as well as the company were, in this instance, legally chargeable. It will not, I take it, be seriously claimed that directors of a corporation can, without compensation therefor, take and retain to themselves shares of its stock known, to both it and to the person under whom it claims, to belong to a third person. No hardship arises out of such a holding in the instant case for no loss to either defendant can flow therefrom. The company's debt to Backus was paid from its resources and the stocks thereby released from pledge were taken over by its directors without any compensation whatever except a previous lending to the company of their credit with that of

Mr. Walter B. Duffy, which credit was at all times protected from harm by the elevator company. In return for such credit loan they have largely profited without reference to these particular shares and have no just complaint.

When inquiries began to be made as to the whereabouts of this stock, the duty of an immediate investigation and a full disclosure was incumbent upon defendants and failure in this regard operated as a fraud upon plaintiff although the defendants at the time unquestionably believed plaintiff had no interest in the stock of the company.

Under facts such as are here portrayed plaintiff is entitled to maintain her action in equity (*Clarke* v. *Gilmore*, 149 App. Div. 445), and must recover her stock unless, as is claimed, the ten years' Statute of Limitations has run. *Gilmore* v. *Ham*, 142 N. Y. 1.

The wrong from which she suffered had, as has been seen, its beginning, not with the issue of the stock to her father as trustee, but when it was taken over by the defendant company and pledged to Mr. Backus. That wrong was finally completed when Mr. Naylon and Mr. Duffy and Mr. Perkins took it for themselves (new certificates were dated in May, 1908) and thereafter remained silent in the face of inquiry. Neither the time when the loan to Mr. Backus was made nor the time when it was paid and the stock released appears.

The action was begun in May, 1916, and as the evidence is, must be deemed to have been timely, for the Statute of Limitations is an affirmative defense and the burden is upon defendants to show that the suit was not commenced within ten years. Where there is no proof upon the subject either way, the defense must fail. *Beugger* v. *Ashley*, 161 App. Div. 576.

Plaintiff is entitled to a return of twenty-one shares of stock of the defendant elevator company, together with the dividends and other profits earned and paid thereon to or for defendants, and in the event they have placed themselves in a position where the actual stock cannot be returned, they must account to her for its value.

Judgment directed accordingly, with costs. Findings may be submitted.

Judgment accordingly.