[L. A. No. 9640. In Bank.—April 26, 1929.]

JOHN E. JEAN, Respondent, v. F. O. JEAN et al., Appellants.

Bernard F. Potter, Earle M. Daniels, G. C. De Garmo and H. B. Cornell for Appellants.

J. Wiseman Macdonald for Respondent.

PRESTON, J.—The judgment is affirmed. Whether respondent owns without restriction certain shares of stock in a family corporation as a gift *inter vivos* from his father and mother, or whether he owns a life interest in the income of their equivalent as a legacy under the will of his father, is the foundation of this proceeding. The control of this corporation is perhaps involved also in the result of this action. The discussion of counsel is voluminous and covers a wide field, but the reasons impelling our conclusion may be confined to a comparatively narrow space. As we have determined that the evidence is sufficient to support the verdict

and judgment, we shall emphasize only that evidence favorable to respondent's contentions, as it may be freely admitted that the evidence is in sharp conflict.

On June 8, 1914, and for many years prior thereto, F. A. and Mary Jean, husband and wife, owned as tenants in common, and not as community property, a certain lot on Flower Street in the city of Los Angeles, upon which was situated on the above date the Jean Hotel, a hostelry of some one hundred rooms. The couple had five children, four sons and a daughter. Having reached an advanced age in life, they began to consider the disposition of their property. Acting under legal advice, they caused to be incorporated under the laws of California the Jean Investment Company, with a capital stock of 25,000 shares of the par value of $1 each. Certificates of stock numbered 1, 2 and 3 were issued to F. A. Jean, the father; Mary L. Jean, the mother, and F. O. Jean, one of the sons, for one share each, respectively, qualifying them as directors of the corporation, said F. A. Jean being made president thereof and said F. O. Jean, secretary. The husband and wife then deeded to the corporation the said real property above mentioned in exchange for 24,997 shares of the capital stock of said corporation, which was evidenced by certificate No. 4 issued in their joint names and delivered to them.

The avowed object of this couple was to so arrange their affairs as to fix the descent of their property and yet to retain the income therefrom during the remainder of their lives. They further desired to dispense with all probate proceedings and to avoid inheritance taxes. Accordingly, on the ninth day of June, 1914, the said couple indorsed said certificate No. 4 and delivered it to the secretary of the said corporation with instructions to issue five certificates of 4,999 2/5 shares each to each of the following named children, as follows: Certificate No. 5 to W. L. Jean, certificate No. 6 to plaintiff J. E. Jean, certificate No. 7 to Walter Jean, certificate No. 8 to Mamie Jean Wyman and certificate No. 9 to F. O. Jean. Said certificates were duly signed by the president and secretary and the seal of the corporation was affixed thereto, all in the presence of the alleged donors. The company had no stock-book, having only loose leaves with stubs attached in lieu of a certificate book, which stubs were not detached from said certificates so made out, with the one exception of that issued to F. O. Jean.

The evidence is in sharp conflict at this point, and happenings for the ensuing eight years will be reverted to later. On the fifteenth day of August, 1922, said F. A. Jean, the father, undertook to cancel said five certificates of stock by writing across the face of each thereof these words: "Aug. 15 22 cancelled," signed "F. A. Jean." Accordingly there was issued on the same day in lieu of said five certificates, certificate No. 10 for 24,997 shares to F. A. Jean. The record shows that at this time Mary L. Jean, the wife, was living but was incompetent, and a few months later she died. Later, and on the twenty-first day of August, 1922, the said F. A. Jean made and published his last will and testament, in which he conveyed his entire estate to the son F. O. Jean, in trust, the whole thereof to remain in trust until the death of his wife, Mary L. Jean, and upon her death the interests of F. O. Jean and Mamie Jean Wyman were to be released from the trust, but the interests of plaintiff and his other two brothers continued thereunder, each to receive the income of a one-fifth interest in said estate during his lifetime, the remainder upon his death to vest in other persons according to the existing contingency therein provided for.

Mary L. Jean died in 1922. F. A. Jean died in 1924. F. O. Jean, as executor of his last will and testament, claimed all of said shares of stock represented by said certificate No. 10 as part of the estate of F. A. Jean, whereupon plaintiff brought this action to establish his ownership of the shares of stock represented by said certificate No. 6 and to recover the said certificate from defendants. To that end he filed a complaint, which later was amended to conform to proof. The issues tendered by the amended complaint were traversed by the answer of defendants. The cause was submitted to the court sitting with a jury. As a result the jury returned a general verdict in favor of plaintiff as well as answering certain special issues propounded to them in his favor. Judgment followed for the plaintiff. Defendants have appealed.

As above noted, the chief contention centers around the sufficiency of the evidence to support the verdict of the jury. The two necessary elements of a gift *inter vivos* involved here are intent to give and a delivery of the gift. We need not pause for an extended citation of authorities

upon the necessary elements of such a gift. (See *Lefrooth* v. *Prentice*, 202 Cal. 215 [259 Pac. 947], and code sections therein cited.) Further portions of the evidence will now be considered bearing upon these two questions.

It was the testimony of Bernard Potter, the attorney for the donors and the corporation and the present attorney for the defendants, that it was the intention of the husband and wife to avoid probate proceedings on their death. This, of course, could not be lawfully done unless the title to the stock passed to the children named in the five certificates. He testified that, as their legal representative, he thought that these shares of stock would, upon the death of F. A. Jean, pass to the children upon the theory that no one would question the delivery thereof. F. O. Jean testified that he could not remember what his father and mother said to him at the time the five certificates above referred to were made out and signed. He testified that the father took said certificates home, but admitted that a short time later they were handed to him by the father and by him kept in his own safe deposit box to which he alone had access for a period of about one year; that later they were returned to the father, who kept them a short time, and still later a box was rented in the name of the Jean Investment Company, wherein the stock remained for a period of about eight years; that during this interval upon request of the father from time to time the stock was returned to his residence and there kept by him for varying periods, being always thereafter returned to the safe deposit box of the company. It seems that the father did not have access to the box in the company's name, although he paid the rental charges upon it. The father and mother repeatedly told the children, and others also, that they had fixed their property so that it could not be changed and that the children would receive it share and share alike at their death, and many other expressions of similar import. Upon one occasion, at the request of the father, the daughter went down to the safe deposit box and the brother, F. O. Jean, exhibited the stock to her. The father said that everything was fixed as he wanted it and that all the children would be treated fairly and right. Upon another occasion the son Walter inquired of his father about the stock and was directed to seek F. O. Jean and

to have him exhibit the stock to him, which was done. This was in June or July, 1922. On this day a family meeting was held, at which practically all the children were present and at which, also, the attorney attended and the existence of the stock and the purpose of its issuance were the subjects of discussion. While the reports of this interview vary, testimony favorable to respondent was adduced to the effect that, at the request of the father, the attorney explained that the stock was so made out that the children would receive it share and share alike and that this arrangement was final and could not be changed and that upon death of the parents the physical possession of the stock would result. From the circumstances of the surrender of certificate No. 4 and the issuance of the five certificates of stock above referred to and from the above set forth facts shown by the record, the jury was amply warranted in finding that said F. A. and Mary L. Jean intended to give irrevocably to their children these shares of stock, subject only to the income therefrom during their natural lives; in fact, it can hardly be doubted that this was their intent at that time.

The next question that presents itself is: Does this evidence warrant the finding of the jury that a delivery, either actual or symbolical, was made of the stock? At the threshold we find a compliance with section 324 of the Civil Code, which reads in part: "Whenever the capital stock of any corporation is divided into shares, and certificates therefor are issued, such shares of stock, except as hereinafter provided, are personal property, and may be transferred by indorsement by signature of the proprietor, his agent, attorney or legal representative, and the delivery of the certificate; but such transfer is not valid, except as to the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by whom and to whom transferred, the number of the certificate, the number or designation of the shares, and the date of the transfer; . . . "

Shares of stock are an incorporeal right and are not susceptible of transfer by manual delivery. The certificates, indeed, are not the shares but only evidence of them. A duly registered stockholder may exercise all the rights of an owner without a certificate. Under the

above section the notation of the transfer upon the books of the corporation by the issuance of the new certificates certainly made at least a *prima facie* case of transfer, sufficient to create a legal delivery of the shares. (*Hotaling* v. *Hotaling,* 187 Cal. 695 [203 Pac. 745] ; *Bacon* v. *Traders' Oil Corp.,* 52 Cal. App. 172 [201 Pac. 477] ; 6 Thompson on Corporations, 3d ed., sec. 4317, p. 168; *Thomas* v. *Thomas,* 70 Colo. 29 [197 Pac. 243] ; *Roberts' Appeal,* 85 Pa. St. 84.) A case strikingly similar in principle and in its facts to the case before us, wherein a delivery of stock was found to have been made, is *Jones* v. *Jones,* (Mo. App.) 201 S. W. 557. (See, also, to the same effect, *Whitney* v. *Whitney etc. Co.,* 121 Misc. Rep. 461 [200 N. Y. Supp. 792].)

The fact that the donors or one of them may have retained the certificate does not necessarily overcome this *prima facie* showing. (*Stone* v. *Daily,* 181 Cal. 571, 581 [185 Pac. 665] ; *Coward* v. *DeCray,* 38 Cal. App. 290 [176 Pac. 56].)

But we need not rely altogether upon the records of the corporation. The father and mother repeatedly, during the years intervening, told their children and others as well that the stock had been delivered to F. O. Jean to hold during their lifetime and then to be physically surrendered to them. This is competent evidence of an important character where delivery is the issue. (*Williams* v. *Kidd,* 170 Cal. 631, 652 [Ann. Cas. 1916E, 703, 151 Pac. 1].)

As above noted, the son, F. O. Jean, had in reality practically exclusive control of these certificates. They were in his safety deposit box, or in a box to which alone he had access for practically all the subsequent years after their issuance. It was to him that the other children were directed by the father when inquiries were made as to their existence and contents, and to him they repaired for this information. This, coupled with the final observation that to carry out the admitted design of the parents to avoid probate proceedings it would be necessary that delivery be made, we do not hesitate to declare evidence ample both to warrant a finding of the intent to give and the delivery necessary to pass the title free from the power of the donors to exercise *jus disponendi.*

■ We see no error in permitting the evidence which tended to show that Mary L. Jean and F. A. Jean owned the real property converted into the stock of this corporation as their separate property, nor in the instructions based upon this assumption. The fact that the wife owned one-half of the real property and one-half of the stock thereafter converted to the names of the children threw some light at least upon the issue of an intent to give and delivery, as she was equally interested in the whole matter, and her conduct, whether by action or inaction, was not without material bearing upon those issues.

■ The only other assignment which we think requires consideration is the instruction to the jury to the effect that if the alleged donors, with intent to give said shares of stock, indorsed said certificate for transfer and delivered it to the proper officers of the corporation, requesting them to reissue said stock to said five children, and said officers did issue said certificates in equal shares as requested, and thereupon the original certificate No. 4 and the said five new certificates so issued were delivered to said F. A. Jean, then delivery of said stock was complete. This instruction is without objection where the intent to make and deliver a gift of shares of stock is found to exist. If this intent is assumed to be present and all other elements of a gift are likewise present, then a transfer upon the books of the corporation is sufficient delivery and the matter no longer rests upon a presumptive or *prima facie* basis; hence the instruction as applied to this case is without objection. The charge to the jury was full and covered every material question contained in the requested instructions that were refused.

After careful examination of the cause we adhere to the conclusion above announced.

Langdon, J., Richards, J., Seawell, J., Curtis, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.

All the Justices present concurred.