[Civ. No. 16610.   First Dist. Div. One.   Sept. 20, 1955.]

OTTO A. LEYDECKER, Respondent, v. ALICE WARREN et al., Defendants; THE ANGLO CALIFORNIA NATIONAL BANK OF SAN FRANCISCO, as Executor, etc., Appellant.

Crabbe & Streiff for Appellant.

Edwin S. Pillsbury, David C. Dunlap and Jay M. Jacobus for Respondent.

WOOD (Fred B.), J.—In this action, brought by the trustee of an express trust to obtain the court's instructions with reference to distribution of the corpus, one of the defendants, the executor of the will of the widow of the trustor, denied the execution of the trust and prayed that the trust property be delivered to it as an asset of the widow's estate. From an adverse judgment the executor has appealed.

The trust property consists of 366 shares of the capital stock of Wellman, Peck and Company, a corporation, evidenced by a stock certificate issued by the corporation certifying that respondent O. A. Leydecker is the owner thereof. This certificate and a document entitled "transfer of stock in revocable trust" subscribed by W. B. Wellman as trustor, were delivered by Wellman to respondent Leydecker on July 10, 1941, Wellman telling respondent to read this document and then sign it (which he did) under the statement "I hereby consent to the foregoing trust and agree to execute same" at the end of the document and below the signature of the trustor.

Thereupon Wellman told respondent to put this document and the stock certificate in an envelope and then to put them in the corporation's vault, which respondent did. Wellman and Leydecker each, as an officer of the corporation, had access to the vault. Appellant contends that because of Wellman's right of access to the vault delivery of the shares was incomplete; that title did not pass from Wellman to Leydecker but remained in Wellman and passed to his widow, Mary E. Wellman, upon his death, and now is a part of her estate.

We do not so view it. That element of control over the envelope and the two papers it contained was at most a circumstance for the trier of the facts to consider in determining whether or not delivery was completed and a trust created. There is evidence which would support an inference that delivery was complete and that the trustor and trustee, who had been closely associated in the conduct of the business of the corporation continuously since 1912, deemed the company's vault a convenient and safe repository for these documents. *Stone* v. *Daily,* 181 Cal. 571, 581 [185 P. 665], was a case where "the formality of a delivery is gone through with the intent of making an immediately effective conveyance, but after delivery the grantor retains possession of the deed for purposes of safekeeping. That such a delivery is valid and is not affected by the fact that the instrument subsequently remains in the possession of the grantor is well established." Similarly, in *Longley* v. *Brooks,* 13 Cal.2d 754, 761-762 [92

P.2d 394], the fact that after its delivery a deed, with the consent of the grantee and for the purpose of safekeeping, was placed and kept in a safety deposit box to which both the grantor and the grantee had access, was deemed "not necessarily inconsistent with an intention to convey a present title to the property described in the deed." ▮ Moreover, the transfer of the 366 shares to respondent upon the books of the corporation, as evidenced by the issuance of its stock certificate to that effect, "made at least a *prima facie* case of transfer, sufficient to create a legal delivery of the shares." (*Jean* v. *Jean,* 207 Cal. 115, 121 [277 P. 313]. See also *Lynch* v. *Lynch,* 124 Cal.App. 454, 458-461 [12 P.2d 741].)

▮ Appellant claims that the trust in question was intended by the trustor to take effect and become operative only in case he and his wife died at or about the same time. It bases this claim upon the fact that in February, 1941, five months prior to the issuance and delivery of the stock certificate and the execution of the trust agreement, Mr. Wellman and his wife each made a will giving all to the other but declaring that "both of us may pass away at or about the same time, and without the opportunity of providing an alternative for the disposition of my estate, and in the event of our said deaths, at or about the same time, and without making any other will, then, and in that event, I do hereby give . . . the . . . remainder of my said estate to O. A. Leydecker, as his sole and separate property, absolutely and forever." At the same time, each issued instructions to Leydecker concerning the disposition he or she wished Leydecker to make of the property should he receive it under the will and Leydecker in writing acknowledged receipt of the instructions and agreed to perform the same.

These instructions of Mr. Wellman, it seems, were mentioned in the trust agreement which he and Leydecker executed in July, 1941. This agreement recited the delivery of the stock certificate to Leydecker subject to certain designated uses and purposes including the payment by the trustee to the trustor of income received by the trustee during the lifetime of the trustor and thereafter to the widow of the trustor during her lifetime and upon her death the issuance of new stock certificates "to those persons named and in the proportions as designated in those certain written instructions I have heretofore executed and give to you." Leydecker testified and the court found that the "written instructions" thus mentioned were the instructions which Mr. Wellman gave Leydecker

when he made his will in February, 1941. That was merely a convenient incorporation by reference and does not furnish a basis for a reviewing court to overrule the trial court and hold, as urged by appellant, that the trustor thereby evinced an intent that the trust which he created should come into operation and become effective only in the event that he and his wife died at or about the same time. Indeed, appellant's interpretation is emphatically negatived by the provisions of the trust agreement which positively and unmistakably imposed upon the trustee the duty of paying over to Wellman all income received during Wellman's lifetime, and thereafter to the latter's widow during the remainder of her life.

Yet, appellant in further support of its theory invokes the testimony of two witnesses who testified that in January or February or during the first three months of 1941, Wellman told them that he and his wife were going to take a trip and " 'we have a trust made out in case anything happens to either or both of us, due to an accident or a calamity or plane accident or train or anything of that nature.' " Even if we assume that such testimony was admissible (not in violation of the parol evidence rule) it does not compel the interpretation appellant would place upon it. The trial court was not bound to construe that testimony as showing that Wellman intended the trust to be effective only in the contingency mentioned in the will. The trial court could have inferred that Wellman was speaking only of the arrangement made in his will for disposition of his estate in the event of their deaths by common calamity, especially in view of the fact that the trust involved in this suit was not created until four or five months later. The trial court well may have inferred that Wellman had not during the first three months of 1941 made any plans for the creation of this trust, or, if he had, that he changed those plans quite radically when he got around to putting his ideas into writing. Even if Mr. Wellman did harbor the thought that this trust should come into existence only if he and Mrs. Wellman died at or about the same time, he did not convey that thought to Leydecker, the trustee. That certainly was no part of the agreement between Wellman and Leydecker whereby Leydecker consented to the trust and agreed to execute it. Under such circumstances any secret intent of Wellman's that the trust agreement should not be presently operative would seem immaterial and ineffective. (See *Davenport* v. *Davenport Foundation*, 36 Cal.2d 67, 71-73 [222 P.2d 11].)

■ Moreover, Leydecker administered this trust with the knowledge and consent of Wellman from its creation in July,

1941, until Wellman's death in 1946. "The practical construction they placed upon the document is entitled to great weight in its interpretation." (Pp. 73-74 of 36 Cal.2d.)

In 1944, Wellman and his wife made certain changes in the instructions which they had given respondent when they made their wills in February, 1941. This they did by interlineations made upon the face of the original, each initialing each interlineation. In addition, they attached to the instructions thus interlined a typewritten statement subscribed by Mr. Wellman and consented to by Mrs. Wellman, referring to and confirming the interlineations. These changes had no direct bearing upon the existence or continuation of the trust which Wellman created in July, 1941; e. g., they did not evince an intent to revoke that trust. They presented, at most, a question whether respondent should distribute the corpus of the trust in accordance with the instructions as executed in February, 1941, or as modified in 1944. With that question appellant has no concern because the instructions, as originally prepared or as modified, provided for disposition of all of the corpus of the trust and none thereof to the widow or her estate.

■ The trust agreement reserved to the trustor the power to revoke the trust at any time by written notice to the trustee. This reservation, contrary to appellant's contention, did not void the trust or make it ineffective for "it has frequently been held that gifts in trust in which the donor reserves the right to revoke the trust are not invalid. [Citations.]" (*Gordon* v. *Barr*, 13 Cal.2d 596, 602 [91 P.2d 101].)

■ Appellant claims that the court erroneously excluded evidence of communications by Wellman to his attorney concerning his intent in making the will and the trust. It is doubtful if it was a proper case for such evidence under any theory, but the issue was not in fact presented. Appellant asked the attorney, "this appointment that Mr. and Mrs. Wellman made with you in 1941, for what purpose was that?" In response to an objection, appellant's counsel said "we are only testifying to the documents in the record already." The court then suggested that the question be reframed "because if you are just talking about identifying papers, if that is it, then it may be all right; but if you are getting into communications, that is when it becomes serious." Neither then nor later did appellant ask the court to rule upon the objection that narration of the instructions given the witness by Wellman would be a violation of the confidential attorney-client relationship. Additionally, in the absence of an offer of proof, appellant

is in no position to urge error upon appeal. (See *People* v. *Ratten*, 39 Cal.App.2d 267, 270-271 [102 P.2d 1097].)

The court found, upon evidence which supports the finding, that at and prior to the death of W. B. Wellman, his wife Mary E. Wellman had full knowledge of the trust and of the property from which it was created and did not at any time during her lifetime protest or object to the trust or its creation, but upon the contrary, during the seven years by which she survived the trustor, she ratified and affirmed the trust and acquiesced therein and waived any possible right to object to it, and that she and her estate and the executor of her will are estopped from asserting the invalidity of the trust or from objecting to the transfer of the property to the trustee; that during the seven-year period she expressly recognized the trust and with full knowledge of it received all of its benefits, the dividend income received from the trust property during the period by which she survived her husband; and that any possible claim by her or her estate or her executor that the trust was invalid or ineffective in whole or in part is barred by laches and by the provisions of the Code of Civil Procedure, section 338, subdivision 3, and section 343.

Appellant's objection that the statute of limitations was not pleaded is without merit. Respondent pleaded the execution and terms of the trust and asked for instructions. Appellant answered, denying all material allegations of the complaint, and praying that the trust documents be annulled and the 366 shares be delivered to appellant as an asset of the estate of Mary Wellman. There was no further pleading for the respondent to interpose. In that situation we believe that proof of the bar of the statute of limitations was permissible. (Code Civ. Proc., § 462; *Union Sugar Co.* v. *Hollister Estate Co.*, 3 Cal.2d 740, 744-745 [47 P.2d 273]; *Hermosa Beach etc. Co.* v. *Law Credit Co.*, 175 Cal. 493, 495 [166 P. 22]; *Sasaki* v. *Kai*, 56 Cal.App.2d 406, 408 [133 P.2d 18]; *Moakley* v. *Los Angeles Pac. Ry. Co.*, 99 Cal.App. 74, 79 [277 P. 883]; 16 Cal.Jur. 486-488, § 90; 21 Cal.Jur. 163-166, § 113; 22 Cal.Jur. 156, § 35.)

Appellant's claim that quieting respondent's title to the shares was outside the issues, is equally without merit. It was clearly an issue tendered by appellant's answer, already described.

Appellant's objections to the allowance of certain expenses of the trustee and of fees and expenses of counsel for certain of the parties for services that were of value to the trust estate, also lack merit. Appellant has no interest therein,

for those allowances are payable out of the trust estate, not by appellant or the estate which it represents.

Appellant contends that respondent's testimony is incredible and not worthy of belief, especially because it was not supplemented by proof of corporate and other records showing his receipt of corporate dividends and payment thereof by him to Wellman during the latter's lifetime and then to Mrs. Wellman until her death. Respondent's testimony was legally sufficient. Whether it was convincing was a factual question for determination by the trial court; resolved by that court, as we have seen, in respondent's favor.

Appellant argues that the trial court should have considered and read together all of the documents mentioned: Both wills, the instructions to which each will referred and the papers signed by Mr. and Mrs. Wellman in 1944, as well as the stock certificate and the trust agreement of July, 1941. The answer is that the court did consider all those documents but with entire propriety drew different inferences and conclusions therefrom than did appellant.

Our examination of the record indicates no error in the refusal of appellant's request to postpone the commencement date of the trial, the denial of its motion for a new trial, or the signing and filing of the findings without holding a hearing on the amendments which appellant had submitted to the proposed findings.*

The judgment appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied October 20, 1955, and appellant's petition for a hearing by the Supreme Court was denied November 16, 1955.

---

*The trial had been set in response to appellant's memorandum therefor, and appellant has not shown that its reasons for postponement were substantial.

The newly discovered evidence urged as a basis for new trial pertained to subjects of which appellant was aware prior to the trial and doubtless could have developed at and during the trial.

The matters of surprise urged as a basis for new trial were the refusal to postpone the trial and certain rulings adverse to appellant upon issues concerning which appellant's counsel should have been and apparently were prepared.

Appellant concedes it was legally competent for the trial court not to hold a hearing on the proposed findings and amendments to the findings. Moreover, we observe that the amendments addressed to those portions of the findings which were of legal concern to appellant, were contrary to the decision which the court had announced. Oral presentation of such amendments would have been but a reargument of issues the court had already decided.