[Civ. No. 24337. Second Dist., Div. One. July 27, 1960.]

AUSTIN JAMES MUMMERT, Appellant, v. SECURITY-FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association) et al., Respondents.

Roland Maxwell, Paul H. Marston and Richard W. Olson for Appellant.

J. Marion Wright and Crocker & Steelman for Respondents.

SCOTT (Robert H.), J. pro tem.*—Plaintiff brought an action for declaratory relief relating to a trust agreement, and from a determination contrary to his contentions has appealed. The defendant bank is the trustee, plaintiff and his sister, May Mummert, now deceased, were the trustors of an *inter vivos* trust and the two remaining defendants are potential beneficiaries of a certain portion of the trust property.

On October 28, 1930, May and Austin Mummert executed the first of a series of documents relating to the trust, reserving in it the power to amend the trust agreement.

On August 10, 1944, the trust estate was divided into two parts: Trust Fund "A" being the theretofore undivided one-half interest which had been conveyed to the trustee by Austin; and Trust Fund "B" being the portion conveyed by May. Austin has exercised unchallenged control over Trust Fund "A" and the dispute in this case relates only to Trust Fund "B." The trustee believes that Trust Fund "B" cannot be controlled by Austin following the death of May on March 8, 1955. Under the agreement as it existed at the time of her death certain valuable property would go to beneficiaries named as defendants herein; whereas Austin now wishes it to go to another beneficiary: Pacific Homes, a corporation, and, on May 20, 1958, attempted to direct the trustee to that effect. The trustee believes that it does not have the power to accede to his wishes with respect to the property in Trust Fund "B" and the trial court so determined. From an examination of the agreements relating to the trust property it is apparent that its decision was correct.

On June 27, 1941, a so-called "Amendment of Declaration of Trust" was executed by the two trustors and the trustee bank which referred to the 1930 agreement and stated that:

---

*Assigned by Chairman of Judicial Council.

"Articles I to XIV, both inclusive, and the amendments thereof made on July 2, 1934, and June 15, 1935 are hereby cancelled and of no further effect and in lieu thereof the following is substituted: etc."

Since there were only 14 articles in the 1930 agreement this language had the effect of cancelling that entire agreement and substituting a new one in its place.

That this was the intention of the parties is confirmed by the language of another "Amendment" on August 10, 1944 which divided the property into Trust Fund "A" and Trust Fund "B," and which explicitly stated that the 1930 agreement and amendments thereto had been cancelled by the "Amendment" of 1941. Thereupon, in this same "Amendment" of 1944 the parties proceeded to cancel the "Amendment" of 1941 and two amendments thereto made in 1942 and to substitute a new trust agreement in their place.

The construction placed upon the "Amendment" of 1941 by the trustors, as shown by this document of 1944, is entitled to great weight in its interpretation. (*Davenport* v. *Davenport Foundation*, 36 Cal.2d 67, 73 [222 P.2d 11]; *Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17]; *Leydecker* v. *Warren*, 135 Cal.App.2d 484, 488 [288 P.2d 51].)

On October 11, 1950, the parties executed another "Amendment" cancelling the "Amendments" of August 10, 1944, and January 11, 1947 (with the substance of the latter we are not here concerned) and substituting a new agreement in lieu thereof, maintaining the separation of the two trust funds "A" and "B." This 1950 "Amendment" provided as follows: "Austin J. Mummert, as the Trustor of Trust Fund 'A' or May Mummert, as the Trustor of Trust Fund 'B,' by written instrument filed with the Trustee, may revoke their respective trusts in whole or in part upon paying all sums due the Trustee and indemnifying the Trustee in a manner satisfactory to it, against liabilities lawfully incurred in the administration of the trust; and said Austin as to Trust Fund 'A' or said May as to Trust Fund 'B' by written instrument filed with the Trustee, may alter or divest the interests of or change beneficiaries and with the Trustee's consent may amend this trust without limitation in any other respect, but only as to their respective trust fund."

On February 13, 1954, this "Amendment" of 1950 was amended to provide: "There is hereby reserved to the Trustor, MAY MUMMERT, the testamentary power of appointment over the whole or any part of the principal and accrued and un-

distributed income of Trust 'B' remaining at the time of her death, exercisable only by a Will or Codicil expressly referring to the power. In the absence of an appointment completely disposing of Trust 'B,' it, or any part thereof not so disposed of shall be continued in trust as follows: From and after the decease of said May, leaving Austin surviving her, all net income of said Trust Fund 'B' shall be transferred to the income account of said Trust Fund 'A' to be governed by all the provisions of the preceding paragraphs (1) and (2) above.'' It further provided for the distribution to the two charitable organizations which are the other defendants herein, of trust funds remaining after the decease of the last survivor of the trustors.

There is no contention that any such testamentary power was exercised by May and under the agreement of 1954 the income of Fund ''B'' is payable to Fund ''A'' during the lifetime of Austin and on his death the corpus of the trust will go to the defendant charitable organizations.

On May 20, 1958, Austin executed and delivered to defendant trustee a document entitled ''Exercise of Power of Appointment.'' It stated: ''To Security-First National Bank of Los Angeles, as Trustee under its Declaration of Trust No. SS70613, dated October 28, 1930:

''Pursuant to the provisions of Article III of Declaration of Trust dated October 28, 1930, Austin James Mummert, survivor of Trustors, does hereby direct that upon his death the entire net income from the trust estate, including both Fund 'A' and Fund 'B' shall be paid . . . to PACIFIC HOMES, a corporation. . . .''

█ Plaintiff urges that because of certain language used in the ''Amendment'' of 1950 that the original agreement of 1930 was revived and reinstated as the document setting out the basic rights of the trustors and duties of the trustee. He quotes the following: ''WHEREAS, the Declaration of Trust dated October 28, 1930 and the Amendments thereof dated August 10, 1944 and January 11, 1947, do not satisfactorily express the terms and conditions upon and under which the Trustee shall continue to hold and subsequently distribute the trust estates; . . .''

We do not discern in the language quoted or in any other portion of the document any intention of the parties to set aside the express cancellation of the terms of the original 1930 agreement which we have heretofore noted. In this ''Amendment'' and in the caption of other ''Amendments'' reference

is made to the date of the original 1930 agreement and to the number given to the trust account, but it is apparent that this was to clearly identify the parties and the subject of the trust from its inception and was not intended to and did not nullify the intentional cancellation in 1941 of the entire substance of the original agreement.

Plaintiff suggests that because the "Amendment" of 1950 mentioned the original agreement of 1930, but did not repeat the language used in 1941 to cancel it, that this omission must be regarded as restoring the 1930 agreement to its original potency. It is obvious however that the parties did not have that intention and that such a construction would amount to making a contract for them which they did not intend or desire.

In the construction of a trust agreement the intention of the trustor as expressed in the trust instrument must control. (*First Trust & Sav. Bank* v. *Costa,* 83 Cal.App.2d 368, 372 [188 P.2d 778].) Its construction depends upon the trustor's intent at the time of the execution as shown by the face of the document and not on any wishes, desires or thoughts after the event. (*Brock* v. *Hall,* 33 Cal.2d 885, 889 [206 P.2d 360, 11 A.L.R.2d 672].)

We have examined the sections of the Civil Code and of 12 California Jurisprudence 2d cited by plaintiff and setting out well-recognized rules relating to the construction to be placed upon contracts where there are documents or provisions which are incomplete, inconsistent or uncertain but find nothing to support plaintiff's contentions herein.

The judgment of the trial court is correct that plaintiff does not have the power to direct the disposition of income or principal of Trust Fund "B" and that since the death of May in 1955 such disposition has been controlled by the above-mentioned documents of 1950 and 1954.

Judgment affirmed.

Fourt, Acting P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 20, 1960.