PENNY et al. v. CENTRAL COAL & COKE CO.

(Circuit Court of Appeals, Eighth Circuit.   April 29, 1905.)

No. 2,116.

1. TRESPASS—INJURY TO FREEHOLD—REMOVAL OF COAL—EVIDENCE OF TITLE.

In an action by the trustees of a' church for trespass on their church property in the removal of coal from beneath the surface of the land, evidence *held* to justify a finding that the title to the land in controversy was in the church.

2. SAME—UNINTERRUPTED POSSESSION—PRESUMPTIONS.

Where a religious society had had uninterrupted possession of land in controversy for 30 years or more, using it as its own, it would be presumed, in the absence of an existing deed to the land, that plaintiff's entry was under a purchase, and that its grantor had lawful right to convey.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Adverse Possession, § 596.]

3. SAME—RELIGIOUS SOCIETIES—TRUSTEES—RIGHT TO SUE.

Where a religious society, consisting of many worshipers, was the owner of certain lands in controversy, its trustees were entitled to sue for an injury to the freehold consisting of a wrongful removal of coal from beneath the land without joining the members of the congregation, under Sand. & H. Dig. Ark. § 5632, providing that when the question is one of common or general interest of many persons, or where the parties are numerous, and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Parties, § 12; vol. 42, Cent. Dig. Religious Societies, §§ 159, 202.]

4. SAME—BILL OF EXCEPTIONS—CONSTRUCTION—ADMISSIONS.

Where, in a suit for the wrongful removal of coal from beneath land belonging to a church and used for the church building and for a graveyard, the bill of exceptions, at defendant's instance, recited that defendant had removed from under the land described in the complaint, without any injury to the surface and without in any way interfering with or molesting or damaging the church and burial ground, 1,200 tons of coal, etc., such recital constituted an admission that the coal taken lay definitely under the whole of the tract of land in controversy or directly beneath the graveyard or buildings of the society.

On Rehearing.

5. TRESPASS—INJURY TO FREEHOLD—RELIGIOUS SOCIETIES—OWNERSHIP—PRESUMPTIONS.

Where an unincorporated religious society had had uninterrupted possession of land in controversy for 30 years or more, and had used it as its own under a lost deed, it would be presumed, in view of the fact that the society was incapable of taking title in itself, that the title was legally conveyed to trustees for its benefit.

6. SAME—MINES—SURVEY.

In trespass on a religious society's property, for the removal of coal from beneath the surface of the land by defendant, the excavation being in defendant's possession, the court should have granted plaintiffs' application for a survey of the mining operations, in order to disclose the direction of such excavation and to ascertain the quantity of mineral extracted.

In Error to the Circuit Court of the United States for the Western District of Arkansas.

138 F.—49

T. B. Pryor and F. A. Youmans, for plaintiffs in error.

Ira D. Oglesby, for defendant in error.

Before SANBORN, Circuit Judge, and PHILIPS and RINER, District Judges.

PHILIPS, District Judge. The plaintiffs in error brought action in trespass against the defendant in error to recover the value of coal mined on, and removed from, a two-acre tract of land claimed to be in the possession of the Cherokee Chapel, African Methodist Episcopal Church, represented by the plaintiffs in error as trustees. Inasmuch as at the close of the plaintiffs' evidence the court directed a verdict for, and entered judgment in favor of, the defendant, it is necessary to give a summary of the facts disclosed by the evidence.

The religious body above named, first known as the "Wollage Colored Church," had, since about 1870, claimed and used the buildings on the two-acre tract of land in controversy as a house of worship and schoolhouse, up to the time of the alleged trespass. From one-half to two-thirds of the area of the two-acre tract claimed by the plaintiffs was inclosed by a rail fence, which inclosure during said period was used as a graveyard by the congregation. The church and schoolhouse were on that portion of the land not inclosed. About the time of the erection of the church building the pastor of the church came into possession of an instrument of writing purporting to have been executed by one W. F. McCullom and wife, and purporting to have been duly acknowledged before a justice of the peace named Watts. He took this instrument of writing to the office of the recorder of deeds at Ft. Smith, Sebastian county, Ark., and delivered it to the recorder of deeds to be recorded. Afterwards this pastor called for the written instrument, and it was delivered to him by the recorder, who showed him the record of the paper in the record book at Ft. Smith. This paper he took home with him, and read the same to the congregation in said church. He was unable to state the description of the land given therein, and specifically what it conveyed. This instrument the pastor delivered to one of the church trustees, and he has not seen the same since. The trustee to whom the paper was delivered moved away from that locality some years thereafter, and died about the year 1880.

At the time said paper was delivered to the recorder at Ft. Smith, Sebastian county, in which the land is situated, had been divided into two recording districts, one being at Ft. Smith and the other at Greenwood. The land described in the petition was situated in the Greenwood district. The records in the latter district were burned in 1880 or 1882. The plaintiffs never had the deed in their possession nor knew its contents. Part of the records covering lands in the Greenwood district were removed to Greenwood before the fire.

In 1870 or 1871 the county surveyor of said county made a survey of a tract of land in the vicinity of the church house and grave-

yard, and while the survey was being made said McCullom and others were present, when McCullom stated that he had sold to the negroes two acres of land, but did not state what two acres. This statement, upon objection by defendant, was excluded by the court. Two lines of the survey referred to ran near by the church and graveyard. The rail fence around the graveyard was subsequently replaced by a wire fence, and a frame house erected within a few feet of the log house used as a church.

The evidence showed that the defendant company had removed from under the land described in the complaint about 1,200 tons of coal, worth, after being delivered on top of the ground on board the cars, $1.10 per ton. The removal of said coal did not disturb the church building or graveyard.

The first objection interposed to the right of recovery by the plaintiffs in error is that they did not show such title as would authorize them to maintain the action of trespass for an injury to the freehold, such as removing coal from beneath the surface of the land. There was some evidence in this case from which the jury might have inferred that a deed had been made conveying the property in question for the benefit of said religious association. While the pastor of the church was unable to state from his recollection that the written instrument described the two-acre tract in question, yet that it was a deed pertaining to this property should not be regarded as a strained inference. This from the facts that the pastor took the written instrument to the recorder's office of the county where the land is situated, and left it there for record, where deeds of conveyance of lands are, under the law, recorded; that he afterwards took from the recorder's office the instrument and read it to the congregation in assembly, presumably that they might be advised and assured that they had acquired the title to the property on which they had erected buildings for worship and were educating their children, and where they were burying their dead. The fact that he then delivered it into the keeping of one of the trustees of the church would indicate that either the instrument itself or the church polity pointed out the trustees as the persons "to have and to hold," for the use of the society. As the evidence shows there are only three trustees, the presumption is that such number constituted the body of trustees of the organization from its inception. As the deed could only be manually placed in the hands of one of them, the further presumption would reasonably arise that he took it for the representative body. The failure to find the deed of record at Ft. Smith, where the pastor testified he delivered it for record, is sufficiently explained by the fact that the county had been divided into two recording districts, and that a part of the records for the land situated in the Greenwood district, including the land in question, was removed there from Ft. Smith, and that the records of the Greenwood district, in 1880 or 1882, were destroyed by fire. If the said instrument purported to convey the parcel of land in question, as applied to the facts of this case, it was not essential that the plaintiffs in error should have gone further in their evi-

dence, and shown that McCullom, from whom they claimed title, owned the land at the time of the alleged conveyance.

In the absence of an existing deed of conveyance to land, the law is that where a person, or association of persons, as in this case, has had the uninterrupted possession of a piece of land for 30 years or more, using it as his or its own, the common law of the land creates the presumption that the entry was under a purchase; and, nemine dissidente, the same law creates the presumption that the grantor had lawful right to convey. Such presumption does not always proceed on a positive belief that the thing assumed has actually taken place. Mr. Justice Field, in Fletcher v. Fuller, 120 U. S. 534–545, 7 Sup. Ct. 673, 30 L. Ed. 759, in a review of the decisions touching this question, said:

"When possession and use are long continued they create a presumption of lawful origin; that is, that they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property. It may be, in point of fact, that permission to occupy and use was given orally, or upon a contract of sale, with promise of a future conveyance, which parties have subsequently neglected to obtain, or the conveyance executed may not have been acknowledged, so as to be recorded, or may have been mislaid or lost. Many circumstances may prevent the execution of a deed of conveyance, to which the occupant of the land is entitled, or may lead to its loss after being executed."

Further on he sums up the rule thus:

"Where any proprietary right is exercised for a long period, which, if not founded upon a lawful origin, would in the usual course of things be resisted by parties interested, and no such resistance is made, a presumption may be indulged that the proprietary right had a lawful origin. The principle is thus stated by Mr. Justice Stephen of the High Court of Justice of England, in his Digest of the Law of Evidence, using the term 'grant' in a general sense, as indicating a conveyance of real property, whether corporeal or incorporeal: 'When it has been shown that any person has, for a long period of time, exercised any proprietary right which might have had a lawful origin by grant or license from the crown or from a private person, and the exercise of which might and naturally would have been prevented by the persons interested, if it had not had a lawful origin, there is a presumption that such right had a lawful origin, and that it was created by a proper instrument, which has been lost.' "

In United States v. Chaves, 159 U. S. 452–463, 464, 16 Sup. Ct. 57, 62, 40 L. Ed. 215, Mr. Justice Shiras, after discussing the question of fact as to whether or not the evidence was sufficient to show affirmatively that the claimant obtained title from the Mexican government, said:

"We do not wish to be understood as undervaluing the fact of a possession so long and uninterrupted as disclosed in this case. Without going at length into the subject, it may be safely said that by the weight of authority, as well as the preponderance of opinion, it is the general rule of American law that a grant will be presumed upon proof of an adverse, exclusive, and uninterrupted possession for 20 years, and that such rule will be applied as a presumptio juris et de jure wherever, by possibility, a right may be acquired in any manner known to the law."

All the facts and circumstances disclosed by the record were, without more, sufficient to show title in fee to the land occupied by this religious society.

It is next objected by the defendant in error that the plaintiffs, who sue to the use of said church, disclose no legal authority to maintain this action. Counsel for plaintiffs in error predicate the right of action in the name of the three parties as trustees, upon section 6381 of the Arkansas Statutes, which is as follows:

"All lands and tenements, not exceeding forty acres, that have been or hereafter may be conveyed by purchase to any person or persons as trustee or trustees in trust for the use of any religious society within this state, either for a meeting house, burying ground, camp ground or residence for their preacher, shall descend, with the improvements and appurtenances, in perpetual succession, in trust to such trustees as shall, from time to time, be elected or appointed by any such religious society according to the rules and regulations of such society."

This statute devolves the title to the church or graveyard property upon the successive trustees of the religious society in perpetuity, where there has been a conveyance under purchase to any person or persons as trustee or trustees for the society. As it is conceded that the plaintiffs who brought this action were then acting trustees of the church, they were entitled to maintain the action if the title to the property had been conveyed by purchase to any person or persons as trustee or trustees for the use of the society. It perhaps would not be too much to say that there was some evidence in this case from which the jury might have inferred that a deed had been made to the trustees, as hereinbefore indicated. But the right of the plaintiffs to maintain this action need not be rested upon said section of the statute. Section 5632, Sand. & H. Dig. Laws Ark., provides that:

"When the question is one of common or general interest of many persons, or where the parties are numerous and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all."

Surely, it must be conceded that it is a question of common or general interest of many persons composing the congregation of a religious society that a coal mining corporation should, unbidden, come and burrow beneath their house of worship and the graves of their dead, for coal, and cart it away. As the worshipers of such a society are generally numerous and changing, constantly coming and going, rendering it difficult, if not impracticable, to obtain the names and the consent of such a conglomerate mass, composed of men, women, adults, and minors, to join in such an action as this, the situation certainly brings the case within the scope of the statute, enabling the acting trustees of the society, to its use, to maintain the action of trespass for such a wrongful entry upon and spoliation of its property. This statute, in its pertinency to the instance of a church congregation, does but give legal recognition to the generally known fact that the temporalities of a religious organization are customarily committed to the care and direction of one or more trustees.

The only remaining contention on behalf of the defendant in error, deemed of sufficient importance to notice, is that the proof did not show that the coal taken lay definitely under the whole

of the two-acre tract of land, or that it lay directly beneath the inclosure of the graveyard, or under the buildings used as a schoolhouse and church. This contention is not fair to the bill of exceptions, which recites that the coal company "has removed from under the land described in the complaint, without any injury to the surface, and without in any way interfering with or molesting or damaging the church and burial ground, 1,200 tons of coal," etc. This, it seems to us, not only concedes that mining was done under the two acres in question; but in view of the statement, which doubtless the defendant in error had the bill of exceptions recite, that the undermining was done without interfering with the graves and buildings, it should be held as tending to show that the mining was done beneath the graveyard and the buildings. It not appearing that the negroes were claiming any other two acres of ground than this, it was a circumstance confirmatory of their claim. A grant of two acres for a graveyard, church, etc., would presumptively be in one body, with regular boundary lines, not zigzagging or in disjected parcels.

It follows that the Circuit Court erred in directing a verdict for the defendant; and its judgment is reversed, and the cause remanded, with directions for further proceedings in conformity with this opinion.

## On Rehearing.

Complaint is made in the motion for rehearing that in the opinion filed herein the court did not consider the point, made by the defendant in error in its brief, that the African Episcopal Church, being an unincorporated voluntary association, was incapable, at law, of taking and holding as grantee under a conveyance, and therefore no presumption arose in this case that any grant, cognizable at law, was ever made to the church. It may be conceded that at common law a deed of conveyance to an unincorporated religious association would be bad, for lack of a capable grantee. Philadelphia Baptist Ass'n v. Hart, 4 Wheat. 27, 4 L. Ed. 499; Beatty v. Kurtz, 2 Pet. 566, 7 L. Ed. 521; Stewart et al. v. White et al. (Ala.) 30 South. 526, 55 L. R. A. 213. But the authorities are also agreed that a valid grant may be made to trustees for such association, and that such title will descend in perpetuity. As shown by the citations in the opinion herein, after such long occupancy and exercise of proprietary right, "there is a presumption that such right had a lawful origin, that it was created by a proper instrument, which had been lost, * * * and that such rule will be applied as a presumptio juris et de jure whenever by possibility a right may be acquired in any manner known to the law." If, as contended, the church association could take only through trustees for its use, and the presumption is, as asserted by the Supreme Court in the cases cited in the original opinion, that, if the title had not lawfully passed to such occupant, its long exercise would have attracted the attention of and "been prevented by the persons interested," we can perceive no sensible reason why the rule should not obtain in this instance that a proper deed was made to trustees for the church. If there was any misconception in the opinon filed herein, it

was in the half concession that such deed to trustees for the church may not have been made.

In respect of the criticism made that the court misconceived the facts touching the filing of the deed in the recorder's office, for the reason that, when the pastor of the church testified he filed the deed in the recorder's office at Ft. Smith, the county had been divided into two recording districts, one at Ft. Smith and the other at Greenwood, and as the land in controversy was situated in the Greenwood division the presumption should be indulged that no deed was so recorded at Ft. Smith, it is sufficient to quote from the bill of exceptions:

"The records of the Greenwood district were burned in 1880 or 1882. * * * Part of the records conveying lands in the Greenwood district were removed to Greenwood before the fire."

It is to be conceded that the description of the land in question, given in the petition, is vague, leaving it in irregular shape—evidently, it is not unreasonable to infer, a clerical mistake of the framer of the petition. But the answer, after describing, by regular lines according to Congressional survey, the lands the defendant claims title to, in effect concedes that the land in controversy is a part thereof, and so the case was tried below. The matter of description can be rectified by amendment, in the event of further litigation.

We deem it proper to observe that the record shows that the plaintiff below moved the court for an order to have the mine in question surveyed, which was refused. Under the situation of this case, the excavation being in the possession of the defendant, it was a very proper case for the court to have ordered a survey, under its prescription. Without this course it was within the power of the defendant to conceal from the plaintiffs two important facts: First, as to the direction of the excavation, to determine whether or not it be beneath the surface survey; and, second, to ascertain the quantity of mineral abstracted. It is now the recognized practice in such contests, on the application of the party out of possession of the mine, to direct such survey.

The motion for rehearing is denied.