[S. F. No. 4735.   Department Two.—December 15, 1908.]

DICK RUDDICK and CAPTAIN LEWIS, Indians, for and on behalf of the Yokayo Tribe of Indians, Respòndents, v. F. C. ALBERTSON, Defendant and Respondent, and T. J. WELDON, as Administrator of the Estate of Charley, Indian, Deceased, et al., Defendants and Appellants.

DEED FOR ILLEGAL TRUST—LEGAL TITLE REMAINS IN GRANTOR.—If a deed of land to trustees fails by reason of the illegality of the trust, the legal result would be that no title passed out of the grantor. The title would not pass to the grantees divested of the trust.

ID.—CONSTRUCTIVE TRUST IN FAVOR OF THOSE PAYING CONSIDERATION.— Under such circumstances, the legal title would remain in the grantor, charged with a resulting trust in favor of those who had contributed the consideration for the deed.

ID.—GRANT TO TRUSTEES OF UNINCORPORATED ASSOCIATION.—A valid grant may be made to trustees for an unincorporated voluntary association, such as a tribe of Indians living in a communal state, and a title so conveyed will descend in perpetuity.

APPEAL from a judgment of the Superior Court of Mendocino County.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

W. D. L. Held, for Appellants.

McNab & Hirsch, for Plaintiffs and Respondents.

Thomas, Pemberton & Thomas, for Respondent Albertson.

HENSHAW, J.—The appeal in this case is from the judgment upon the judgment-roll alone.   The history of the litigation, as disclosed by the findings, is as follows:   The Yokayo Indians are a body of native redmen who, from time immemorial, have been known and recognized as a tribe existing and living in tribal relationship, with their own laws, customs, usages, and rules.   The tribe selected chiefs or captains, who under its loose system of government, controlled the people as to their tribal affairs, and dealt for them with the outside world.   Their ownership of property was communal; they

possessed no real property, and their life was nomadic.   In
October, 1881, the four captains or chieftains of this tribe
were Captains Dick, Charley, Bill, and Lewis.   With more
knowledge and foresight than the majority of their fellow
tribesmen, these captains, recognizing the improvidence of
their people, their lack of permanent homes, and their inability
to make provision for the future, decided that they would
purchase a rancho, which should become the permanent
abode of the tribe, for the benefit of all its members,
whereby all might have lands to till, homes while living,
and burial places when dead.   According to custom, they
called the tribe together at an appointed place, and there
was collected from the individual members of the tribe, by
voluntary contribution, it not being now ascertainable who
were the donors nor the amounts of their donations, the sum
of eight hundred dollars, which was given to the captains.
They, through a trusted white man as their agent, undertook
with this money the purchase of a certain rancho then owned
by one J. H. McPeak.   The purchase price of the land was forty-
five hundred dollars.   Charles Yates acted as the agent of the
tribe in the matter of this purchase, the eight hundred dollars
was paid, and Yates, as the agent of the tribe, took a deed to
the land in his own name.   From time to time, as the tribe
under the directions of its captains accumulated money, in
farming the land into possession of which they had entered
and by the sale of baskets which they manufactured, the land
was completely paid for.   These later moneys, like the first
eight hundred dollars, came from the voluntary contributions
of the tribe's members.   So that all of the moneys which paid
for the purchase of this property were the mingled com-
munal funds of the entire Yokayo tribe.   When the land was
finally paid for the tribe assembled to deliberate as to how
they should take title to it, and, as a result of these delibera-
tions, it was in tribal assembly agreed upon that the deed
should be made to their four captains for the benefit of the
tribe.   Such a deed was actually made by Yates on the twen-
tieth day of October, 1881, the grantees being described as
follows:   "Dick, Lewis, Bill, Charley, all Indians, and their
tribe."   Ever since this date the tribe has continued in the
ownership, occupation, and use of these lands, farming them
under their communal custom.   During the lifetimes of the

CLIV Cal.—41

four captains they, individually and collectively, acknowledged, respected, and fulfilled their trust, recognizing always their fiduciary position, and consulting with the various members of the tribe, and with the tribe in meeting assembled, upon all matters pertaining to the lands. For the transaction of business with the outside world too difficult for them to understand, or too intricate for them to manage, these captains employed a white man as their agent, and since the year 1896 that agent has been F. C. Albertson, one of the defendants herein. This agent, besides transacting business for the benefit of the tribe, such as paying their taxes and protecting them in the making and execution of contracts, was the custodian of the tribal funds, which funds were paid over by him to the captains upon request. These funds were used for various purposes—the purchase of farming machinery and implements, for feasts and barbecues, marriage festivals and buryings, and, in one instance, two hundred dollars was drawn for per capita distribution amongst the members of the tribe. Thus it was the understanding and intention of the tribe and of their captains, the grantees named in this deed, that the land should be held as the communal property of them all, a system which history tells us is the most usual form of the holding of real property upon the part of primitive races emerging from barbarism. And so they lived, the captains, as has been said, always recognizing that their trust and tenure were of the nature indicated. In time two of these captains died, Charley and Bill, and one T. J. Weldon was appointed administrator of the estates of both. Weldon laid claim to an undivided one-fourth interest in these lands as the property of the estate of each. Upon the assertion of this claim the living captains, Dick and Lewis, instituted this action on behalf of the tribe, asserting no personal private interest in the property on their own behalf, but asserting a full and complete tribal interest in it for all. F. C. Albertson, the white agent, was made a party defendant for the complete determination of all rights as he was the custodian of the tribal funds. Mr. Albertson joins with the plaintiffs and with the tribe in this effort to preserve their rights. Upon these findings the court gave judgment that neither the estate of Captain Charley nor the estate of Captain Bill, nor defendant Weldon, as administrator of these estates, had any ownership,

right, or title to the lands, or to the moneys in the possession of defendant Albertson.

Appellant's contention, in brief, is that the trust attempted thus to be created in the four captains of the tribe for the benefit of the tribe, is void for many reasons, not necessary here to particularize; that from this it results that the deed is to four distinct individuals who take as tenants in common, each an undivided one quarter; that the legal title was vested by the deed, and that, as there is no trust, the title remains in the designated grantees. We have said that it is unnecessary to particularize the grounds upon which appellant contends that the trust is void. This is so because, if it were void (a matter which we do not here decide) appellant would be entitled to no relief. Clearly, the four captains took as trustees, and if the trust fails, the legal result is that no title whatsoever passed out of the grantor. The legal title would not then be in the four captains and in their estates, but would remain in their grantor. So that, if the argument for which the appellant contends should prevail, it would result. not in conferring title to any of the land upon these captains living or their heirs dead, but would result merely in the determination that the legal title was in Charles Yates, with a resulting trust in favor of those who had contributed the money for the purchase of the land. Appellant's effort is to convert the trust property to the personal use and benefit of his intestates under his contention that the trust has failed. But such an act is abhorrent to equity and is never permitted. (*Mandeville* v. *Solomon*, 33 Cal. 44.) It follows, therefore, that appellant, having no interest in the subject of this litigation, is not injured by the determination and his position would not be bettered, even if he should prevail in his contention that the trust is void. But, finally, it may be said, that it would be a reproach to our jurisprudence if, under all the circumstances shown, our laws should compel that this tribe be driven from the land which it had purchased, and forced again to become wanderers on the earth. But such reproach, we take it, does not attach. At common law, it is true, a deed of conveyance to an unincorporated voluntary association was bad for lack of a capable grantee, and cases will be found which hold that where the grantee could not take directly, he or it cannot take through the medium of a

trustee. But from this grew an abuse which equity was prompt to remedy. So that it is now recognized that a valid grant may be made to trustees for such an unincorporated voluntary association, and that such title will descend in perpetuity. (*Penny* v. *Coke* Co., 138 Fed. 769, [71 C. C. A. 135]; *Liggett* v. *Ladd*, 17 Or. 89, [21 Pac. 133].) And certainly, if ever there was a case where equity would seek to sustain such a grant, it is the case here presented.

The judgment appealed from is therefore affirmed.

Lorigan, J., and Melvin, J., concurred.