[L. A. 21005. In Bank. Sept. 19, 1950.]

RALPH M. DAVENPORT, as Administrator, etc., et al., Appellants, v. THE DAVENPORT FOUNDATION (a Corporation) et al., Respondents.

( 67 )

R. R. Colby and Joseph D. Taylor for Appellants.

Allard, Brownsberger, Shelton & O'Connor, Joseph A. Allard, Jr., L. A. Shelton, Brady & Nossaman and Walter L. Nossaman for Respondents.

TRAYNOR, J.—On May 23, 1939, Levi M. Davenport, then 78 years of age, conveyed certain property to La Verne College, a corporation, as trustee. The trustee was given only ministerial duties. The management of the trust, to be known as the "Davenport Foundation," was committed to a board of directors of five named persons who were to constitute the board of trustees of the Foundation. The trust provided:

### "RESERVES

"Before distribution is made of any of the net income reserves shall be set aside as follows to wit:

"(1) 25% of the gross income for taxes, supervision and upkeep.

"(2) 12% of the gross income for replacements and betterments.

### "DISTRIBUTION OF INCOME

"All the net income available for distribution shall be paid in monthly installments, as follows:

"(1) To the Trustor, Levi M. Davenport, the sum of Four Hundred Dollars ($400.00) per month, for and during the term of his natural life.

"(2) To La Verne College, a corporation, the sum of Three Hundred Dollars ($300.00) per month for the purpose of establishing a department of PHILOSOPHY and RELIGION, which department shall be established at the beginning of the school year 1939-1940.

"(3) To make suitable and proper provisions for the support and maintenance of J. R. Davenport, my brother, as his needs may require, not to exceed however, One Hundred Dollars ($100.00) per month, all of which shall be at the sole discretion of the Board of Trustees. In the event that any of my children should come to want, the Board of Trustees shall use a portion of the income to care for them in so far as their needs may require, all of which shall be solely within the discretion of the Board of Trustees.

"(4) To American Bible Society, with its principal office at Bible House, New York City, the sum of Three Hundred Dollars ($300.00), per annum, payable annually at the discretion of the Board.

"(5) To the payment of annuities in such amounts as may be agreed upon between the Board of Trustees and the annuitants, who may add to this Trust.

"(6) All of the rest and residue of undistributed income shall be used by the Board of Trustees for such purposes consistent with the purposes of this trust as may be determined in the sole discretion of said Board of Trustees."

The trust then specified in detail the type of religious education that should be provided at La Verne College and the manner in which successors to the board of trustees should be selected. The trustees had to subscribe to certain enumerated religious beliefs, and the Elders Body of the Church of the Brethren was given power over their selection and removal. The declaration of trust conferred usual administrative powers on the board of trustees and also provided:

"Others may add to this Foundation, provided the additional income shall be used in maintaining the Doctrines and Principles of our church, as herein set forth, provided however, that the donor may reserve a portion of such income for himself or herself, or for relatives during his, her, or their lifetime. . . .

"In the event that any provision or provisions of this instrument are or are adjudged to be for any reason unenforceable the remainder hereof, disregarding such provisions, shall subsist and be carried into effect.

"This trust may not be revoked nor, except as otherwise herein provided may any of the corpus of the trust estate be withdrawn."

The Davenport Foundation was incorporated in 1940, and title to the property held by La Verne College that had been conveyed to it by the trustor was deeded to the Davenport Foundation.

Levi M. Davenport died January 6, 1947, and this action was then commenced by the administrator of his estate and his heirs to have the trust declared invalid and the property distributed to them. The complaint also stated a cause of action to have an alleged trust in a bank account declared invalid. This cause of action raises distinct issues and will be treated separately.

Plaintiffs attack the validity of the trust, first on the ground

that its provisions suspend the power of alienation of the trust corpus in perpetuity and that its purposes are not wholly charitable, and secondly on the ground that the declaration of trust was not intended to be operative during the lifetime of the trustor and is therefore void as an attempted testamentary disposition. Defendants contend, however, that the noncharitable provisions are operative only for a period measured by lives in being, that the declaration of trust is nontestamentary in character, and that in any event plaintiffs' cause of action is barred by the statute of limitations. At the close of plaintiffs' case the trial court granted a nonsuit as to the causes of action attacking the validity of the declaration of trust establishing the Davenport Foundation. It is necessary to determine, therefore, whether there is evidence in the record that would support findings in plaintiffs' favor on the question of the validity of the trust, and if so whether their action is barred by the statute of limitations.

The declaration of trust provided that Davenport should receive $400 per month and the use of his home rent free during his lifetime. The board of trustees were given power to consult with Davenport and absolved of any responsibility for loss resulting from following his requests, recommendations or advice. Plaintiffs do not contend that the reservations of these interests in the trustor would render the trust invalid as an attempted testamentary disposition (see, *Tennant* v. *John Tennant Memorial Home*, 167 Cal. 570, 576, 578-579 [140 P. 242]; Restatement, Trusts, § 361). They contend, however, that there is evidence in the record that would support a finding that the trustor did not intend the declaration of trust to be operative at all during his lifetime. They rely on the facts that the trustees appointed Davenport manager of the Foundation and allowed him to deal with the property in the same manner after the declaration of trust was executed as he had before. These facts, they contend, will support an inference that it was understood between Davenport and the trustees that the trust was not to become operative during his lifetime. They rely on the rule that parol evidence is admissible to prove that a document was not intended to take effect until the happening of a condition precedent. (See, *P. A. Smith Co.* v. *Muller*, 201 Cal. 219, 222 [256 P. 411].)

Plaintiffs' contention overlooks the fact, however, that

the declaration of trust constituted a tripartite agreement among Davenport, the board of trustees, and La Verne College. There is no evidence that La Verne College understood that the declaration of trust was not intended to be presently operative. It was a party to the declaration of trust and operated under its terms. It received the payments provided for it and used the money according to the directions set forth in the declaration of trust. Under these circumstances, any secret intent of Davenport and the trustees that the declaration of trust should not be presently operative would be immaterial. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133-134 [48 P.2d 13] ; *Watson* v. *Peyton*, 10 Cal.2d 156, 158 [73 P.2d 906].) Accordingly, plaintiffs' contention that the trust is invalid because it was not intended to be operative during the trustor's lifetime cannot be sustained.

The parties agree that an irrevocable trust, although partially charitable, is invalid to the extent that under its terms the trustees may apply the income or corpus to noncharitable purposes after the lapse of the statutory period of lives in being or 25 years from its creation. (Civ. Code, §§ 715, 716; *Estate of Sutro*, 155 Cal. 727, 734-736 [102 P. 920] ; see, Restatement, Trusts, § 398.) The only express statements of the purposes of the Davenport trust are found in the six paragraphs dealing with the distribution of income. The first of these, $400 per month to the trustor for life, presents no problem since the payments terminate on the trustor's death. The second and fourth are concededly charitable and hence valid, although the payments may continue beyond the statutory period. The parties' conflicting contentions with respect to the correct interpretation of the other paragraphs may be briefly summarized.

The third paragraph provides for payments to the children of the trustor. If the word ''children'' includes children who might be born after the creation of the trust, this paragraph would permit distribution of income for noncharitable purposes for longer than the statutory period. Defendants contend, however, that in view of the advanced age of the trustor the word ''children'' may properly be interpreted as referring only to then living children. (See, Restatement, Property, § 243, illus. 4.)

The fifth paragraph provides for the payment of annuities to persons who may add to the trust. Plaintiffs contend that under this paragraph the trustees could use income from the original trust corpus to pay annuitants who later contributed

to the trust but who were not yet in being at the time of its creation. Defendants, on the other hand, contend that paragraph five is governed by the later provision providing that "Others may add to this Foundation, provided the additional income shall be used in maintaining the Doctrines and Principles of our church, as herein set forth, provided however, that the donor may reserve a portion of such income for himself or herself, or for relatives during his, her, or their lifetime." As so limited, they contend paragraph five only provides for the later creation of separate trusts whose noncharitable purposes will terminate within lives in being at the time of their creation.

Paragraph six provides that "All of the rest and residue of undistributed income shall be used by the Board of Trustees for such purposes consistent with the purposes of this trust as may be determined in the sole discretion of said Board of Trustees." Plaintiffs contend that under this paragraph income could be used for any purpose consistent with the purposes of the foregoing five paragraphs. They contend that payments to descendants or other relatives of the trustor born after the creation of the trust would be for a purpose consistent with payments to himself or his brother or his children. Thus under their interpretation the trustees would have power under paragraph six to devote income to noncharitable purposes for longer than the statutory period. Defendants, on the other hand, contend that when the instrument is read as a whole it is clear that the words "purposes consistent with the purposes of this trust" can properly be construed as meaning only purposes consistent with the religious purposes of the trust. They rely on the extensive provisions dealing with the type of religious education to be provided at La Verne and the religious qualifications required of the trustees. They also point out that income from the property of others who add to the trust must be used to "maintain the Doctrines and Principles of our church."

It would serve no purpose, however, to attempt to resolve these conflicting contentions from an examination of the declaration of trust standing by itself. The record contains relevant extrinsic evidence bearing on the question of interpretation that would support findings in favor of plaintiffs on at least some of their contentions. The trust was administered by the trustees with the assistance of the trustor for eight years before his death. The practical con-

struction they placed upon the document is entitled to great weight in its interpretation. (*Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17].) The most cogent evidence that a primary purpose of the trustor was to provide for descendants of his, whether or not they were living at the time the declaration of trust was executed, is the fact that an agreement was executed by the trustor and trustees whereby one of the trustor's grandchildren was to receive $100 per month for life after the death of her mother. Given full weight the execution of this agreement would sustain a finding that under paragraph six the trustees had power to devote income to noncharitable purposes after the statutory period had run. Granting a motion for nonsuit was therefore erroneous unless the severability clause may be given effect to eliminate the invalid powers or the statute of limitations bars plaintiffs' action. We have concluded that the severability clause may not be given such broad effect and that the statute of limitations does not bar the action.

 The trust provision that "In the event that any provision or provisions of this instrument are or are adjudged to be for any reason unenforceable the remainder hereof, disregarding such provisions, shall subsist and be carried into effect" states essentially the same rule as that laid down in Probate Code, section 101. That section provides that "Where [the testator's] intention cannot have effect to its full extent, it must have effect as far as possible." Under its terms the rule has been established that " 'valid trusts should not be disregarded because in the instrument creating them one particular invalid trust is declared, unless the latter is so inseparably blended with the others that it cannot be eliminated without destroying the main intent of the trustor, or working manifest injustice to the other beneficiaries.' " (*Estate of Micheletti*, 24 Cal.2d 904, 909 [151 P.2d 833].) It is assumed for the purposes of applying this rule in reviewing the judgment of nonsuit that under paragraph six the trustor intended the trustees to have discretion to apply the remainder of the income for the benefit of relatives of his, whether in being or not at the time of the creation of the trust, or for charitable purposes. The choice is stated to be in the sole discretion of the trustees. Under these circumstances the valid and invalid powers under paragraph six are inseparably blended and the whole paragraph must fail. (*Estate of Sutro*, 155 Cal. 727, 734-735 [102 P. 920]; *Estate of Kline*, 138 Cal.App. 514, 520 [32 P.2d 677]; *Estate of*

*Vance*, 118 Cal.App. 163, 164-165 [4 P.2d 977].) Since the nonsuit must therefore be reversed, no purpose would be served by attempting to determine at this time in the absence of findings based upon all the evidence the extent to which other provisions of the trust may be severable from the invalid provisions, if any. (See, Restatement, Trusts, § 398.)

To the extent that the express trust may be found to have failed because of an invalid restraint on alienation, La Verne College and its successor trustee, the Davenport Foundation, will have held the legal title to the property on a resulting trust for the trustor and his heirs. (See, *Bainbridge* v. *Stoner*, 16 Cal.2d 423, 428 [106 P.2d 423].) Defendants do not dispute the rules that ordinarily the trustee of a resulting trust is considered a voluntary trustee and that the statute of limitations does not begin to run in favor of a voluntary trustee until he repudiates the trust. (See, *Berniker* v. *Berniker*, 30 Cal.2d 439, 447-448 [182 P.2d 557].) They contend, however, that in this case the trustees were involuntary resulting trustees because they intended to hold under the express trust rather than under the resulting trust. They thus seek to distinguish the purchase money resulting trust cases where the trustee not only voluntarily holds in trust but. intends to hold for the resulting beneficiary. It is generally held, however, that it is immaterial whether the trustee intends to hold for the resulting beneficiary or for the intended beneficiary of the invalid express trust. With respect to the statute of limitations, he is treated as a voluntary trustee so long as he does not repudiate the trust. (See, 3 Scott on Trusts, § 409, pp. 2173-2174; 1 Nossaman, Trust Administration and Taxation, § 117, pp. 111-113, and cases cited.) Any other rule would allow a trustor to evade prohibitions against restraint of alienation and perpetuities by establishing an invalid trust and merely refraining from attacking it until the statute of limitations had run.

Defendants contend, however, that the cases of *Page* v. *Page*, 143 Cal. 602 [77 P. 452], and *Mackenzie* v. *Los Angeles Trust etc. Bk.*, 39 Cal.App. 247 [178 P. 557], establish the rule in California that in the case of a resulting trust arising because of the failure of an express trust, as distinct from the case of a purchase money resulting trust, no repudiation is necessary to start the statute of limitations running in favor of the trustee. The basis of the decision in the Page case is not entirely clear, and the statement relied upon in the

Mackenzie case is dictum. Neither of these cases has been followed by later decisions of the California courts that have consistently classified resulting trusts of both types as voluntary trusts for the purposes of the statute of limitations. (*Steiner* v. *Amsel,* 18 Cal.2d 48, 54-55 [112 P.2d 635]; *Bainbridge* v. *Stoner,* 16 Cal.2d 423, 428-429 [106 P.2d 423]; see, *Ruddick* v. *Albertson,* 154 Cal. 640, 643 [98 P. 1045].) Thus to the extent that they are inconsistent with the generally prevailing rule, the Page and Mackenzie cases must be deemed to have been overruled. Since defendants never repudiated the trust, plaintiffs' action is not barred by the statute of limitations.

■ On the basis of facts pleaded in their answer defendants finally contend that plaintiffs are estopped by laches from bringing this action. They contend that La Verne College has seriously changed its position in reliance on the validity of the trust. This defense may not properly be considered in reviewing the judgment of nonsuit, and in any event it would be obviated if on retrial it were determined that the provisions for the benefit of the college are severable from the remainder of the trust.

Shortly before his death Davenport decided that he should make some provision for ten or twelve nephews and nieces. He considered the possibility of adding $10,000 to the Foundation and giving the trustees discretionary power to provide up to $1,000 for each nephew or niece if he or she should have special need for it. Instead, however, on November 23, 1946, he went to his bank with defendant Steinour, treasurer of the Foundation, to make arrangements with the bank to hold an account he had in such a way that Steinour could dispose of it after his death for the benefit of the nieces and nephews and the Foundation. An officer of the bank told Davenport that the bank could take no responsibility and suggested that Davenport open a joint account with a person whom he trusted to carry out his wishes. Davenport then transferred the money in his account into a joint account in his and Steinour's names. After he and Steinour left the bank, Davenport executed the following document:

"11-23-46

"I am directing the Davenport Foundation Inc. to set apart funds sufficient to hold $1000.00 in the interest of the following: [List of 12 relatives of Davenport.]

"This $1000.00 for each shall be set apart from funds

derived from a personal bank account now in the Security-First National Bank at 230 Ea. Colorado St. Pasadena, Calif.

"The purpose is to have this, $1000.00 to be a part of Foundation except that if any of these above named persons are in special need, he or she shall appeal for a portion to the $1000. to their interest, and the Foundation may allot to such person for their need from this personal fund.

"Signed L. M. Davenport."

The trial court did not grant a nonsuit on the cause of action by which plaintiffs sought to secure title to the joint bank account, but at the close of the trial made findings in defendants' favor. The court found that in opening the joint account and executing the directive Davenport created a trust of which Steinour was trustee. The beneficiaries were the named relatives during their lifetimes and thereafter the Davenport Foundation. The purpose of the trust was to provide funds for the named relatives if they should be in need and to add to the assets of the Foundation. The Foundation, however, filed a disclaimer of any interest in the fund.

Plaintiffs contend that no trust was created because Davenport did not intend a trust to arise until after his death; that he merely appointed Steinour his agent to carry out his wishes after his death. They rely on the use of the future tense in the directive to show that no trust was created at the time of its execution. There was substantial evidence, however, to support an inference that by opening the joint account Davenport effectively created the trust. He had expressed his wish that the Foundation should immediately become the trustee. Opening the joint account was a substitute scheme adopted because of uncertainty over the tax consequences of giving the money directly to the Foundation. The use of the future tense in the directive is not inconsistent with the present creation of a trust of which Steinour was trustee. Steinour wished to have directions in writing as to what his duties should be. The directive indicated that the Foundation should become the trustee when the bank account was transferred to it. It does not compel the conclusion that no trust was to arise until that transfer was made. Accordingly, the trial court was justified in concluding that a trust arose when the joint bank account was opened.

Plaintiffs also contend, however, that the remainder interest in the Foundation is void because the declaration of trust setting up the Foundation is invalid for the reasons

78

discussed above. They contend that because the remainder interest is void the whole trust in the bank account must fail and that the invalidity cannot be cured by the disclaimer of its interest by the Foundation. It is clear, however, that the interests created in the life beneficiaries are severable from the remainder. Thus even if the Foundation trust should be found to be wholly or partially invalid it would not affect the validity of the life interests. The life interests and the remainder are not inseparably blended. The invalid interest may be eliminated without destroying the main intent of the trustor or working injustice to other beneficiaries. Accordingly, under the rule set forth in *Estate of Micheletti*, 24 Cal.2d 904, 909 [151 P.2d 833], the trust in the bank account must be sustained to the extent it provides for the named beneficiaries.

Since defendant Davenport Foundation filed a disclaimer of any interest in the fund, the judgment should be modified to award the remainder interest in the joint bank account to the heirs at law of Levi M. Davenport. As so modified that part of the judgment adjudicating the disposition of the joint bank account is affirmed. In all other respects the judgment is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred. Schauer, J., concurred in the judgment.