**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In Re,

ALEXIS HILL SCHWARZKOPF, AKA
Alexis Michaels, AKA Alex
Michaels; JOANNE LOUISE
MICHAELS, AKA Joanne Louise
Schwarzkopf,

*Debtors,*

---

ROBERT L. GOODRICH, Chapter 7
Trustee,

*Appellant,*

v.

JUAN BRIONES, Trustee for Kokee
Family Trust 1992, AKA The
Apartment Trust; ALEXIS HILL
SCHWARZKOPF, AKA Alexis
Michaels, AKA Alex Michaels;
JOANNE LOUISE MICHAELS, AKA
Joanne Louise Schwarzkopf,

*Appellees.*

No. 08-56974

D.C. No.
5:07-cv-01547-SJO

18709

In the Matter of: JOANNE LOUISE
MICHAELS, AKA Joanne Louise
Schwarzkopf and ALEXIS HILL
SCHWARZKOPF, AKA Alexis
Michaels, AKA Alex Michaels,
                                    *Debtors,*

JUAN BRIONES, Trustee for Kokee
Family Trust 1992, AKA The
Apartment Trust; ALEXIS HILL
SCHWARZKOPF, AKA Alexis
Michaels, AKA Alex Michaels;
JOANNE LOUISE MICHAELS, AKA
Joanne Louise Schwarzkopf,
                                    *Appellants,*

                v.

ROBERT L. GOODRICH, Chapter 7
Trustee,
                                    *Appellee.*

No. 08-57026

D.C. No.
5:07-cv-01547-SJO

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
June 9, 2010—Pasadena, California

Filed November 23, 2010

Before: Alfred T. Goodwin and Johnnie B. Rawlinson, Circuit Judges, and Algenon L. Marbley, District Judge.*

Opinion by Judge Goodwin

---

*The Honorable Algenon L. Marbley, District Judge for the Southern District of Ohio, sitting by designation.

## COUNSEL

Gary A. Pemberton, Shulman Hodges & Bastian, Foothill Ranch, California, for the plaintiff-appellant-cross-appellee.

Martha A. Warriner, Reid & Hellyer, Riverside, California, for the defendants-appellees-cross-appellants.

**OPINION**

GOODWIN, Senior Circuit Judge:

Robert L. Goodrich, the Chapter 7 trustee for the bankruptcy estates of Alex Michaels, aka Alexis Michaels, aka Alex Schwarzkopf ("Michaels"), and Joanne Louise Michaels, aka Joanne Louise Schwarzkopf (collectively, "the Debtors"), seeks to recover for the estates' benefit approximately $4 million in assets. Goodrich alleges that the Debtors fraudulently transferred those assets to two irrevocable trusts known as the Apartment Trust and the Grove Trust and that the district court erred in holding that neither trust is Michaels's alter ego. On cross-appeal, the Debtors contend that the district court erred in holding that the Apartment Trust is invalid and may therefore be disregarded.

"We apply the same standard of review to the bankruptcy court findings as does the district court: findings of fact are reviewed under the clearly erroneous standard, and conclusions of law, *de novo*." *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1166 (9th Cir. 1990). On de novo review of the district court's decision, *id.*, we conclude that the Apartment Trust is invalid and that the Grove Trust is Michaels's alter ego. We therefore affirm the district court's decision in part and reverse it in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Debtors created both the Apartment Trust and the Grove Trust on June 15, 1992. They named their minor child, Sydnee Michaels ("Sydnee"), beneficiary and appointed Juan Briones ("Briones") trustee.

Simultaneously with the creation of the Apartment Trust, Michaels transferred all the stock of Kokee Woods Apartments, Inc. ("Kokee Woods"), of which he was the sole shareholder, to the Apartment Trust. The bankruptcy court found

that a Texas state-court verdict rendered against Kokee Woods made the stock potentially worthless at the time of the transfer. It also found, however, that the Debtors were insolvent and that "Michaels devised [the transfer] to avoid his creditors' ability to recover the asset because [he] intended to pursue an appeal of the Texas Verdict and he did not want to go through all the effort of an appeal only to have his creditors pursue the Corporation's stock." Therefore, it concluded, the transfer "was made for the fraudulent purpose of avoiding the Debtors' creditors." After the transfer, Michaels successfully appealed the verdict, winning a judgment of $8,096,120.45 plus interest. The trust paid Michaels consulting fees of $3,000 per week to collect the judgment.

The only asset placed into the Grove Trust at its inception was $25.00. In December 1997, however, Michaels's company Impetrol Corporation purchased four lots of land containing avocado groves ("the Grove Lots") for the Grove Trust. The bankruptcy court noted that the assets used to acquire the Grove Lots belonged to Michaels and that "Impetrol was nothing but a shell . . . to put properties in the corporate name." It found that the Debtors were insolvent at the time of the purchase and that "[t]he Grove Trust's acquisition of the Grove Lots was a fraud on the creditors of the Debtors." It also found that Michaels dominated and controlled all decisions related to both the Grove Lots and the Grove Trust and that "Briones had no role nor took any action . . . other than to write checks as demanded by Michaels." The Grove Trust paid Michaels at least $105,000 in unexplained fees from February to September 2002.

Although the trusts paid for Sydnee's education, clothing, medical care, car, and golf lessons and tournament expenses, the Debtors also benefitted from both trusts. The bankruptcy court found that "Mr. Briones provided payments to Mr. Michaels from both the Grove Trust and the Apartment Trust without complete documentation" and that, "[t]hrough his influence over Mr. Briones, Mr. Michaels received advances

and expedited payments from either the Apartment Trust and/or the Grove Trust to avoid a creditor about to levy on a judgment against him." Michaels asked for and received reimbursement from one of the trusts for another daughter's wedding and for a life insurance policy; Briones testified that he did not know who Michaels named as the policy's beneficiary. The Debtors lived rent-free with Sydnee in a manufactured home that the Grove Trust purchased after acquiring the Grove Lots and in a house in Temecula, California that the Apartment Trust purchased in 2003.

Briones maintained no books or records for either trust prior to 2000 and often intermingled their funds. The trusts shared a bank account from October 2002 through January 2003, Briones transferred money between the trusts when he determined that one needed more, and the Apartment Trust made purported "loans" to the Grove Trust that were not documented, had no terms for repayment, and were never repaid. The trusts also paid each other's expenses. For example, the parties stipulated that the Grove Trust paid "various amounts for the maintenance" of the Temecula, California property held by the Apartment Trust, and that the Apartment Trust paid water bills and trustee fees for the Grove Trust.

In October 2003, the Debtors filed bankruptcy petitions seeking to discharge approximately $5.4 million in debt. Goodrich, as trustee for the consolidated bankruptcy estates, filed an adversary complaint seeking to recover approximately $4 million in assets from the Apartment Trust and the Grove Trust. Following a bench trial, the bankruptcy court initially concluded that both trusts are valid and that neither is the alter ego of the Debtors. On Goodrich's motion for reconsideration, however, the court partially reversed its earlier ruling, holding that the Grove Trust is Michaels's alter ego. As to the Apartment Trust, it reaffirmed its earlier rulings that the trust is valid because it was created for the benefit of a minor child and that it is not Michaels's alter ego.

The district court affirmed the judgment of the bankruptcy court in part and reversed it in part. First, the district court held that the Apartment Trust is invalid because one of the Debtors' purposes in creating it was to defraud creditors, but it remanded for the bankruptcy court to determine whether that issue is time-barred, noting that Goodrich had failed to argue before the bankruptcy court that the seven-year statute of limitations did not begin to run until Briones repudiated the trust. Second, relying on *S.E.C. v. Hickey*, 322 F.3d 1123 (9th Cir. 2003), the court held that legal ownership is a prerequisite to alter ego liability in California and that, because Michaels was neither trustee nor beneficiary of the trusts, they were not his alter ego. Goodrich appealed to this court, and the Debtors cross-appealed.

## II.  DISCUSSION

### 1.  *The Apartment Trust*

Goodrich argues that the district court erred in holding that the Apartment Trust is not Michaels's alter ego, while the Debtors, on cross-appeal, contend that it erred in holding that the Apartment Trust is invalid. We agree with the district court's conclusion that the Apartment Trust is invalid, and we further hold that Goodrich's claim to invalidate it is not time-barred.[1] Because we hold that the Apartment Trust is invalid and may therefore be disregarded, we need not address whether it is Michaels's alter ego.

---

[1]The district court remanded on the statute of limitations issue, noting that Goodrich had failed to argue before the bankruptcy court that the seven-year statute of limitations did not begin to run until Briones repudiated the trust. Although the bankruptcy court did not address that precise question, however, the parties sufficiently raised the issue—when the statute of limitations began to run—before the bankruptcy court, and the issue therefore is not new on appeal. Moreover, we note that "[w]e may consider an issue conceded or neglected below if the issue is purely one of law and the pertinent record has been fully developed," as is the case here. *United States v. Gabriel*, 625 F.2d 830, 832 (9th Cir. 1980).

**[1]** "It is well-settled that a trust created for the purpose of defrauding creditors or other persons is illegal and may be disregarded." *In re Marriage of Dick*, 18 Cal. Rptr. 2d 743, 752 (Cal. Ct. App. 1993); *see also* Cal. Prob. Code § 15203 ("A trust may be created for any purpose that is not illegal or against public policy"). Properly designating a minor child as a beneficiary does not validate a trust that was created with an improper purpose. *See* 1A *Scott on Trusts* § 63 (4th ed. 2001) ("Although the terms of the trust in themselves are perfectly lawful, the trust is illegal where the motive of the settlor for creating the trust is to defraud creditors or other persons"). Here, the bankruptcy court found that Michaels transferred the Kokee Woods stock simultaneously with the creation of the Apartment Trust and that the transfer "was made for the fraudulent purpose of avoiding the Debtors' creditors." Those findings are sufficient to establish that Michaels's purpose in creating the trust was to defraud creditors. The Apartment Trust is therefore an invalid trust.

**[2]** Moreover, even to the extent it alleges fraudulent transfer, Goodrich's claim is not time-barred by the seven-year statute of limitations set forth in California Civil Code § 3439.09(c).[2] If an express trust fails—if, for instance, it was formed for a fraudulent purpose—the trustee holds legal title to the property on a resulting trust for the trustor and his or her heirs. *See Bainbridge v. Stoner*, 106 P.2d 423, 429 (Cal. 1940) (In Bank). "[T]he trustee of a resulting trust is considered a voluntary trustee and . . . the statute of limitations does not begin to run in favor of a voluntary trustee until he repudiates the trust." *Davenport v. Davenport Found.*, 222 P.2d 11, 16 (Cal. 1950). Because the Apartment Trust is invalid, Briones is a voluntary trustee on a resulting trust for Michaels and his heirs. The statute of limitations did not begin to run

---

[2]California Civil Code § 3439.09(c) states that "a cause of action with respect to a fraudulent transfer or obligation is extinguished if no action is brought or levy made within seven years after the transfer was made or the obligation was incurred."

until Briones repudiated the trust, that is, until he answered Goodrich's complaint and denied that the Apartment Trust's assets are property of the bankruptcy estate. We therefore conclude that Goodrich's claim is not time-barred, and we affirm the district court's judgment that the Apartment Trust is invalid.

## 2. *The Grove Trust*

Goodrich also argues that Michaels is an equitable owner of the Grove Trust and that equitable ownership is sufficient to confer alter ego liability. The Debtors respond that the Grove Trust is not Michaels's alter ego because he is not its legal owner, and that allowing alter ego liability would constitute reverse piercing—that is, "pierc[ing] the corporate veil to reach corporate assets to satisfy a shareholder's personal liability"—which the California Court of Appeal has prohibited in the corporate context. *Postal Instant Press, Inc. v. Kaswa Corp.*, 77 Cal. Rptr. 3d 96, 97 (Cal. Ct. App. 2008). In determining whether alter ego liability applies, we apply the law of the forum state. *Towe Antique Ford Found. v. I.R.S.*, 999 F.2d 1387, 1391 (9th Cir. 1993). Under California law, the Grove Trust is Michaels's alter ego.

**[3]** California recognizes alter ego liability where two conditions are met: First, where "there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased;" and, second, where "adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice." *Wood v. Elling Corp.*, 572 P.2d 755, 761 n.9 (Cal. 1977). Factors suggesting an alter ego relationship include "[c]ommingling of funds and other assets [and] failure to segregate funds of the separate entities . . . ; the treatment by an individual of the assets of the corporation as his own . . . ; the disregard of legal formalities and the failure to maintain arm's length relationships among related entities . . . ; [and] the diversion [of assets from a corporation by or to a] stockholder

or other person or entity, to the detriment of creditors, or the manipulation of assets . . . between entities so as to concentrate the assets in one and the liabilities in another." *Associated Vendors, Inc. v. Oakland Meat Co., Inc.*, 26 Cal. Rptr. 806, 813-15 (Cal. Ct. App. 1962) (citations omitted). California courts have applied the alter ego doctrine to trusts. *See, e.g.*, *Torrey Pines Bank v. Hoffman*, 282 Cal. Rptr. 354, 359 (Cal. Ct. App. 1991) (holding guarantors of a family trust liable for the trust's debts under an alter ego theory).

**[4]** We first address the Debtors' reverse piercing argument. As they correctly note, the California Court of Appeal held in *Postal Instant Press, Inc.* that "a third party creditor may not pierce the corporate veil to reach corporate assets to satisfy a shareholder's personal liability." 77 Cal. Rptr. 3d at 97. We "must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *Owen By and Through Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) (citations and internal quotation marks omitted). In the context of trusts, however, the California Supreme Court has allowed alter ego claims where a trust is alleged to be a debtor's alter ego. Thus, in *Wood v. Elling Corp.*, the California Supreme Court gave leave to amend a complaint to assert alter ego claims, concluding, "If it were alleged and proven that the two trusts in question were themselves alter egos of the [defendants], those trusts would essentially drop out as independent legal entities." 572 P.3d at 762. In the absence of further guidance from California courts, therefore, we cannot extend the prohibition on reverse piercing to the trust context.

**[5]** Second, we address the Debtors' contention that legal ownership is an absolute requirement for alter ego liability. No California case explicitly addresses the question, but in *Hickey* the Ninth Circuit interpreted California law as implying that ownership is a prerequisite. 322 F.3d at 1128-29. *Hickey* addressed the ownership requirement in the corporate

context, concluding that stock ownership is a requirement for the imposition of alter ego liability. *Id.* In so concluding, however, *Hickey* cited with approval *Firstmark Capital Corp. v. Hempel Financial Corp.*, an earlier Ninth Circuit opinion applying California law and holding that a wife's "community property interest in [her husband's] stock holdings . . . is sufficient to satisfy the ownership requirement." 859 F.2d 92, 94 (9th Cir. 1988). *Hickey* therefore did not foreclose the possibility that equitable ownership might be sufficient in some contexts.

[6] California case law suggests that equitable ownership is sufficient. The California Supreme Court has noted that an individual's expectation that he would received shares of a corporation "supports an inference that he was an equitable owner" and justifies imposition of alter ego liability. *Minton v. Cavaney*, 364 P.2d 473, 475 (Cal. 1961). And in *Troyk v. Farmers Group, Inc.,* the California Court of Appeal imposed alter ego liability on a managing agent and attorney-in-fact although it did not own the interinsurance exchange at issue. 90 Cal. Rptr. 3d 589, 620 (Cal. Ct. App. 2009). Legal ownership was not necessary because, although "[a]n insurance exchange is 'owned' by the subscribers, . . . given that the subscribers are required to appoint the attorney-in-fact as managerial agent, the 'ownership' element of the alter ego doctrine is not applicable in this context." *Id.* at 620 n.27 (citation and internal quotation marks omitted). In essence, the managing agent was the equitable owner. *See also Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000) (where the alter ego doctrine applies, "courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners").

[7] In the context of trusts, moreover, equitable interest is traditionally sufficient to confer ownership rights. Thus, under California law, trust beneficiaries hold an equitable interest in

trust property and are " 'regarded as the real owner[s] of [that] property.' " *Steinhart v. County of L.A.*, 223 P.3d 57, 72 (Cal. 2010) (alterations in original; citation omitted); *see also* 76 Am. Jur. 2d *Trusts* § 258 (2010) (the creation of a trust places legal title in the trustee and equitable title in the beneficiary; courts will enforce a beneficiary's equitable interest). We conclude that, under California law, equitable ownership in a trust is sufficient to meet the ownership requirement for purposes of alter ego liability.

**[8]** Here, Michaels is an equitable owner of the Grove Trust because he acted as owner of the trust and its assets. *See In re Marriage of Dick*, 18 Cal. Rptr. 2d 743, 752-53 (Cal. Ct. App. 1993) (inferring from husband's use of assets not in his name that, "notwithstanding his absence of legal title, husband controlled ownership of [the assets] through the fiction of a trust"). Having used his own assets and a corporation that the bankruptcy court termed "nothing but a shell" to acquire the Grove Lots, Michaels continued to act as owner of the trust assets and as trustee; Briones, the named trustee, "had no role nor took any action . . . other than to write checks as demanded by Michaels." Michaels also acted as a beneficiary of the Grove Trust, which purchased a home where he lived rent-free, paid maintenance expenses for another home where he lived, again rent-free, and paid Michaels at least $105,000 in unexplained fees. The trusts also paid for a wedding, at Michaels's request, and for a life insurance policy with an unknown beneficiary. Those facts suggest that Michaels is an equitable owner of the Grove Trust.

**[9]** Given that Michaels's equitable ownership is sufficient to meet the ownership requirement, the bankruptcy court did not clearly err in finding an alter ego relationship. *See Towe Antique Ford Found.*, 999 F.2d at 1391 (alter ego determinations are typically findings of fact reviewed for clear error). As the bankruptcy court found, Michaels "dominated and controlled all decisions of the Grove Trust." He also received payments from the trusts without documentation and to avoid

a creditor and diverted assets to the detriment of his creditors, using his assets to acquire the Grove Lots at a time when he was insolvent. Given that the bankruptcy court called the acquisition of the Grove Lots "a fraud on the creditors of the Debtors," failure to find alter ego liability would sanction a fraud or promote injustice. The bankruptcy court did not err in finding that the Grove Trust is Michaels's alter ego.

## III. CONCLUSION

**[10]** We therefore hold that the Apartment Trust is an invalid trust and that Goodrich's action to invalidate it is not time-barred. We also hold that the Grove Trust is Michaels's alter ego.

Costs are awarded to appellant Goodrich.

AFFIRMED IN PART AND REVERSED IN PART.