### CLARKE v. GILMORE et al.

(Supreme Court, Appellate Division, First Department.　March 8, 1912.)

1. LIMITATION OF ACTIONS (§ 104*)—FRAUDULENT CONCEALMENT.

Defendant cannot defeat a suit to compel him to account for the proceeds of corporate stock intrusted to him for sale on the theory that suit in equity did not lie and action at law was barred by the six-year statute of limitations, where he fraudulently concealed the fact of a sale beyond the period of limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 511–513; Dec. Dig. § 104.*]

2. COSTS (§ 166*)—EXTRA ALLOWANCE—RIGHT TO—TIME FOR DETERMINATION.

Right to an extra allowance of costs under Code Civ. Proc. § 3253, cannot be passed on until all the issues in the action have been settled.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 636, 638–643; Dec. Dig. § 166.*]

Appeal from Special Term, New York County.

Action by Stephen G. Clarke against James R. Gilmore and others. From an interlocutory judgment for plaintiff, defendant named appeals. Modified and affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Charles Blandy, for appellant.
Ernest G. Stevens, for respondent Clarke.

McLAUGHLIN, J.　On the 10th of July, 1899, the plaintiff and the defendants Bagley and Hildick (née Wood), as trustees under the will of John A. Bagley, deceased, held 8,000 shares of the preferred stock of the Reno Oil Company, a Pennsylvania corporation. On that day they entered into a contract with the defendant Gilmore, which reads as follows:

"Memorandum of agreement made and entered into this 10th day of July, 1899, between James R. Gilmore, of the borough of Manhattan, city of New York, N. Y., party of the first part, and Katharine C. Bagley, Stephen G. Clarke, and Jessica T. Wood, as executors and trustees of the last will and testament of John A. Bagley, deceased, parties of the second part.

"Whereas the parties of the second part as executors aforesaid, are the owners and holders of eight thousand shares of the property preferred stock

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the Reno Oil Company, a corporation organized and existing under and by virtue of the laws of the state of Pennsylvania, and

"Whereas the affairs of said company have been so managed that there is danger that the value of the said stock will be wholly destroyed, and

"Whereas the parties of the second part have no available funds to institute necessary legal proceedings to protect the value of said stock, and

"Whereas the party of the first part has agreed to take an assignment of the said stock and to institute proceedings at his own cost and expense to protect the value of said stock, and if possible to realize and recover the value thereof, and

"Whereas the parties of the second part have duly assigned said eight thousand shares of stock to the party of the first part:

"Now therefore the party of the first part in consideration of such assignment, does hereby agree to and with the parties of the second part, that he will institute and prosecute, at his own cost and expense, necessary legal proceedings to protect the value of said stock and to recover the fair value thereof and from and out of any moneys that he may recover, after deducting the amount of money actually disbursed by him, excepting for legal services, to pay over to the parties of the second part an amount equal to the price paid for said stock by said John A. Bagley, deceased, which price it is hereby stipulated and agreed was $16,000, less amount of actual disbursements.

"It is mutually understood and agreed that the party of the first part shall not involve the parties of the second part in any expense, whether for legal or other services.

"In witness whereof the parties have hereunto set their hands and seals the day and year first above written.

"James R. Gilmore.
"Katharine C. Bagley, Ex. & Trustee.
"Stephen G. Clarke, Ex. & Trus.
"Jessica T. Wood, Trustee.

"In the presence of F. J. Lancaster, 20 Broad Street, N. Y. City."

At the time the contract was executed, the stock was formally assigned to Gilmore. The certificates, however, were not delivered until some time thereafter; another assignment having, in the meantime, also been delivered. The consideration of both assignments and the delivery of the certificates was the same—the agreement. Gilmore, without instituting legal proceedings of any kind, some time prior to 1902, sold all of the stock, together with from 17,000 to 20,000 other shares and received in payment $50,000. Prior to that time he had also received $5,000 as a forfeit on another contract for the sale of the stock. He never informed the trustees, nor any of them, until February, 1910, that he had sold the stock, and up to that time they were ignorant of it. Instead, he "deliberately and intentionally, fraudulently, concealed from * * *" them that fact. He also, after the sale, according to the finding of the court, until 1910, "deliberately and intentionally, fraudulently deceived the said * * * trustees into believing that the said stock had not been sold by him, but had become and was valueless, and that nothing had been received by him therefrom." In April, 1910, the plaintiff, having learned of the sale, demanded that Gilmore render an account of his proceedings in regard to the stock. This he refused to do, or to pay over any part of the proceeds derived from the sale. Thereupon the plaintiff brought this action for the purpose of having it adjudged that the agreement of June 10, 1899, was still in force, and for an accounting. The other trustees either neglected or refused to join with the plaintiff and were, thereupon, made parties defendant. Gilmore interposed a separate an-

swer, in which he set up, among other defenses, that the plaintiff had (1) an adequate remedy at law, and (2) the six-year statute of limitations.

At the trial the evidence offered on the part of the plaintiff established the foregoing facts, and the court so found. The defendant offered no evidence. The court directed an interlocutory judgment for the relief demanded in the complaint, adjudging that the plaintiff was entitled to recover $16,000, together with interest thereon, compounded yearly, less the amount of Gilmore's actual and proper disbursements, pursuant to the contract; appointed a referee to take and state an account of his disbursements; and awarded an extra allowance of costs to the plaintiff of 5 per cent. on the recovery, not to exceed, however, $2,000. Gilmore appeals from the judgment and asks for a reversal upon the grounds: (a) That the action was improperly brought in equity; (b) that the cause of action attempted to be alleged was, at the time the action was commenced, barred by the six-year statute of limitations; and (c) that the extra allowance was improperly granted.

[1] I am of the opinion that this action is properly brought in equity and that the six-year statute of limitations does not apply. The purpose of the agreement was to enhance the value of the stock and effect a sale thereof so that the trustees should receive $16,000, less actual disbursements connected with the sale. It may be assumed, therefore, that under the agreement Gilmore had the right to sell, and, having received more than $16,000, that the sale was properly made. He then became liable to the trustees, and they had a cause of action against him which could have been enforced in an action at law. Had they been informed of the sale, or possibly if he had not represented that a sale had not been made, this cause of action would have been barred by the six-year statute of limitations. He not only did not inform them of the sale, but for nearly 10 years kept them in ignorance of it, by telling them that he had not sold it, that it had become worthless, and that the certificates had been filed with some court in Pennsylvania in connection with litigation. This concealment and deception on his part constituted a fraud, and when discovered gave to the trustees a cause of action which could be enforced in equity for fraudulent concealment. One cannot, by his own fraudulent act, destroy a cause of action which can be enforced at law, and thereby escape, in equity, liability to the extent the party has been defrauded. A court of equity would be of little use if this could be done.

I think the facts in this case bring it within the rule laid down in Lightfoot v. Davis, 198 N. Y. 261, 91 N. E. 582, 29 L. R. A. (N. S.) 119, 139 Am. St. Rep. 817, 19 Ann. Cas. 747. There, the plaintiff, in 1875, owned certain school bonds which, together with the memorandum with reference to same, were stolen from him by his father-in-law. He had originally bought the bonds through his father-in-law, who, when notified of the loss, said he would "try and notify the districts of the loss and stop payment." The bonds matured a few years later, and the interest, as it accrued, and the principal, were collected by the father-in-law. Upon his death, which occurred in

1899, there was found among his papers the memorandum with reference to the bonds, and an examination of his books showed he had collected the interest and principal. Upon discovery of these facts the plaintiff brought an action against the administrator with the will annexed of his father-in-law, asking judgment that the defendant "account and pay over to him the amount of said bonds and the income thereof, if it can be traced, and if it cannot be traced, that he may have judgment against" the defendant as administrator for the sum of $16,000. The answer interposed set up, among other defenses, the six and ten year statutes of limitations. Plaintiff had a recovery, which on appeal was affirmed by the Court of Appeals. Chief Judge Cullen, who delivered the opinion, after reviewing authorities at length, said:

"In cases like the one before us there are two distinct elements of fraud: (1) The original larceny; (2) the subsequent concealment of the stolen property and of its sale and the receipt of its proceeds. Assuming (but only for the argument) that under the first no bill in equity could be maintained, I think the second affords a good ground for the interposition of equity, and, as already stated, though the plaintiff failed to identify in the estate of the deceased the proceeds of his bonds, he was still entitled to what would be a personal judgment were the original wrongdoer still living, for in equity it is the general rule 'that the relief to be administered will be adapted to the exigencies of the case as they exist at the close of the trial.'"

In the present case Gilmore became rightfully possessed of the stock and of the proceeds of the sale. In this respect this case is distinguishable from the Lightfoot Case; but as to his concealment and his receipt of the proceeds, it is precisely like it. There, the thief concealed the fact that he had sold the bonds, and his act in doing that was no more reprehensible than was Gilmore's in stating to the trustees that the stock had not been sold. If the equitable powers of the court could be resorted to in the one case to make reparation for the damage sustained, it can be equally so in the other. In this respect I see no distinction between the two cases. See, also, Newton v. Porter, 69 N. Y. 133, 25 Am. Rep. 152; American Sugar Refining Co. v. Fancher, 145 N. Y. 552, 40 N. E. 206, 27 L. R. A. 757; and Bosworth v. Allen, 168 N. Y. 157, 61 N. E. 163, 55 L. R. A. 751, 85 Am. St. Rep. 667.

I think the action was properly brought in equity under the facts of this case to prevent the defendant from resorting to the statute of limitations. Where one has obtained an advantage by fraud, equity will not permit him to hold it by resorting to the statute of limitations. Pomeroy's Eq. Jurisprudence (3d Ed.) § 917; Clark v. Augustine, 62 N. J. Eq. 689, 51 Atl. 68; Melms v. Pabst Brewing Co., 93 Wis. 153, 66 N. W. 518, 57 Am. St. Rep. 899; Lieberman v. First Nat. Bank, 2 Pennewill (Del.) 416, 45 Atl. 901, 48 L. R. A. 514, 82 Am. St. Rep. 414, and authorities cited.

In 25 Cyc. 1016, the rule is tersely stated as follows:

"The doctrine of equitable estoppel may, in a proper case, be invoked to prevent defendant from relying upon the statute of limitations, it being laid down as a general principle that when a defendant electing to set up the statute of limitations, previously, by deception or any violation of duty toward plaintiff, has caused him to subject his claim to the statutory bar, he must be ·

charged with having wrongfully obtained an advantage which equity will not allow him to hold."

When the stock was sold, Gilmore was legally obligated to inform the trustees by paying over the proceeds. He not only failed to perform this obligation, but "deliberately and intentionally, fraudulently deceived the  *  *  *  trustees into believing that the said stock had not been sold." His act was as reprehensible as it would have been had he in the first instance stolen the proceeds of the sale. Having committed such acts, he cannot shield himself from liability by resorting to the statute of limitations.

Price v. Holman, 135 N. Y. 124, 32 N. E. 124, is an authority for requiring, in a proper case, a defendant to pay compound interest. It would be somewhat difficult to find a case where it was more properly imposed than the present.

[2] It would also seem to be a proper case for an extra allowance of costs under section 3253 of the Code of Civil Procedure, notwithstanding the fact that the defendants offered no evidence at the trial. Metropolitan Ins. Co. v. Standard National Bank, 44 App. Div. 319, 60. N. Y. Supp. 666. But I do not understand that the question of an extra allowance can be passed upon until all of the issues in the action have been settled. Here, an issue remains, viz., the amount of Gilmore's disbursements, as to which a reference has been ordered; in other words, whether or not an extra allowance will be granted will be determined at the time of the entry of final judgment.

My conclusion, therefore, is that the judgment appealed from should be modified by striking out the provision for an extra allowance, without prejudice to an application for same when final judgment may be entered, and, as thus modified, affirmed, with costs to the plaintiff respondent. All concur.