VILLAGE OF HERKIMER, Respondent, v. AMERICAN SURETY COMPANY OF NEW YORK, Appellant.

Fourth Department, March 5, 1963.

*Bliss & Bouck* (*F. Walter Bliss* of counsel), for appellant.

*Carl G. Scalise* for respondent.

*Per Curiam.* This action was brought to recover upon a series of public officer's bonds, issued by the defendant surety company, covering the Clerk Treasurer of the village, for the period from April 1, 1946 to April 1, 1956. Defalcations on the part of the Clerk Treasurer occurred throughout this period, but they were not discovered until 1958, after her retirement from office. This action was commenced on March 20, 1961.

The defendant moved for partial summary judgment on the ground that recovery for any defalcations which occurred more than six years before the commencement of the action was barred by the Statute of Limitations. Special Term denied the motion.

We agree with the appellant that the action is solely one in contract and that it is governed by the six-year Statute of Limitations, running from the time of the accrual of the cause of action. The crucial question is: When did the cause of action accrue? In our opinion, it accrued when the village discovered or should have discovered the defalcations. One of the risks against which the defendant's bonds were designed to protect the village was the risk that the officer might appropriate funds of the village and keep the misappropriation concealed for many years. It therefore must have been contemplated by the parties that the cause of action upon the bonds would not accrue until the village had discovered, or in the exercise of reasonable diligence should have discovered, the misappropriation. This is the only construction of the bonds which gives effect to the intent of the parties and to the purpose which the bonds were meant to serve. "Any other construction, would make the very frauds against which the sureties covenanted the means for relief from liability." (*Lieberman* v. *First Nat. Bank of Wilmington,* 18 Del. 416, 426.) The motion for summary judgment was therefore correctly denied.

The same result may be reached in another way. It is clear beyond question that the Statute of Limitations has not run in favor of the officer. An action for fraud is not barred until six years after the discovery of the fraud (Civ. Prac. Act, § 48, subd. 5). Furthermore, the officer bore a fiduciary relationship to the village and, as we recently held, a fiduciary who fraudulently conceals a breach of his fiduciary obligation is estopped from invoking the Statute of Limitations as a defense in an action brought to enforce the fiduciary obligation. (*Erbe* v. *Lincoln Rochester Trust Co.,* 13 A D 2d 211, appeal dismissed 11 N Y 2d 754.) In this situation, the surety on the fiduciary's bond also continues to be liable, under settled principles of suretyship. "Where the principal's concealment of his default prevents the running of the Statute of Limitations until the discovery of the default, the statute does not begin to run in favor of the surety until the creditor may reasonably be expected to discover the default." (Restatement, Security, § 121.)

The rationale of the rule is given in *Comment a* to section 121 as follows: "[A] choice must be made between two innocent persons, the creditor and the surety. The choice is made in favor of the creditor so long as he cannot reasonably be expected to discover the principal's default, because unless limited by the surety's contract, the surety's obligation is co-extensive with that of the principal. So long as the original duty of the principal continues, the liability of the surety persists."

See, citing and following the Restatement, *Chisholm* v. *House* (183 F. 2d 698, 707).

The Restatement section reflects the rule generally prevailing throughout the country. (See cases collected in 37 C. J., Limitations of Actions, § 365, p. 980; 54 C. J. S., Limitations of Actions, § 208, p. 229; 50 Am. Jur., Suretyship, § 184, p. 1024.)

The order appealed from should therefore be affirmed.

GOLDMAN, J. (concurring). This case presents the problem as to whether, on a motion for summary judgment, the complaint in an action upon a public officer's bond should be dismissed where the answer pleads the Statute of Limitations as a bar and where the fraud of the principal on the bond may be inferred from the complaint. The problem is dichotomous in that (1) the purpose of the Statute of Limitations must both be considered and properly subserved and (2) the principles of suretyship and the rights and duties peculiar to that legal relationship must be acknowledged. Further complications ensue from the overshadowing of fraud which is not explicitly pleaded but which is implicit in the operative facts. The hiatus flowing from pleading a cause of action against a surety without joining the principal as a party, where the causes accrue only because of a breach on the part of the principal, may only be filled by emphasizing substance over form and by adhering both to the principles of suretyship law and the *raison d'etre* of the Statute of Limitations, no matter how inartistically the issues may be presented.

Defendant appeals from that part of an order denying its motion for partial summary judgment dismissing the causes of action in the complaint, except as to one which is clearly timely, on the ground that such causes are barred by the Statute of Limitations.

The Village of Herkimer commenced this action on March 20, 1961 to recover from the surety certain penal sums specified in five bonds written pursuant to subdivision 1 of section 11 of the Public Officers Law. Each of these ran for a period of two years, the initial one covering April 1, 1946 to April 1, 1948 and seriatim thereafter until April 1, 1956. On each, Helen Gillette, Clerk Treasurer of the village from 1930 until retirement in 1955, was principal and defendant was surety.[1]

---

1. Each of the bonds recited: "Now, therefore, the condition of this obligation is such that if the above bounden principal shall well and faithfully discharge the duties of his office and promptly account for and pay over all moneys or property received by him as such officer, in accordance with law, or in default thereof, the parties executing this undertaking will pay all damages, costs and expenses, resulting from such default, not exceeding the sum above mentioned, then this obligation to be void, otherwise to remain in full force and effect."

The complaint alleges that upon specified occasions over a nine-year period from 1946 to 1955, the Treasurer did not cancel various tax assessments which were paid, totalling $10,584.14, nor did she mark paid the duplicate tax receipts, but simply gave the taxpayer a receipt for the payments. She never credited to the village these moneys received, nor accounted for them from daily cash receipts. Upon one occasion she issued a tax search indicating that no taxes were due, although in fact they were. For these acts, it appears from the moving papers, she was convicted of the crime of misappropriation and falsification of accounts as Treasurer of the village in violation of section 1865 of the Penal Law.

As alleged in the complaint, her conduct was violative of her statutory duty as Village Treasurer to deposit all moneys from real estate taxes within 10 days after receipt in a bank designated by the Village Board of Trustees (Village Law, § 81). More important for the purpose of this motion, and giving the complaint its proper construction, it is inferable that the Treasurer was fraudulent in the exercise of her duties. Once fraud appears, and indeed is the gravamen of the action, the limitation of time in subdivision 5 of section 48 of the Civil Practice Act is germane. (See *Erbe* v. *Lincoln Rochester Trust Co.*, 3 N Y 2d 321.)

Because the cause of action is brought against the surety only, defendant argues that the nature of the action is *ex contractu* and that the contract of suretyship was breached each time when the principal failed to deposit tax receipts. Upon that premise, it is asserted that with the exception of the last taxpayer's payment, the six-year Statute of Limitations bars these claims. This argument disregards the reality that there is no cause of action against the surety unless there is a cause of action against the principal. Correlatively, no cause of action for defalcation can exist against the surety before any cause of action accrues against the principal. (See *Eising* v. *Andrews*, 66 Conn. 58; *Mills* v. *Baird*, 147 S. W. 2d 312 [Tex.]; Ann. 173 A. L. R. 576, 604.) Until discovery of the Treasurer's fraud, the Statute of Limitations is tolled as to her and an action to procure a judgment on that ground against her runs from that time (Civ. Prac. Act, § 48, subd. 5; Civ. Prac. Act, § 15; Dawson, Undiscovered Fraud and Statutes of Limitation, 31 Mich. L. Rev. 591).

Should a different limitation of time be granted the surety than the principal? We think not. In the main, the obligation of a surety continues for the same period as that of the principal (72 C. J. S., Principal and Surety, § 107). In *Nasaba Corp.* v.

*Harfred Realty Corp.* (287 N. Y. 290, 296) relied upon in the *Erbe* case (*supra*) it is said: "At least, where the complaint may be so construed as to state causes of action the prosecution of which is not barred by any statute of limitations, speculation as to what other cause of action may be sufficiently alleged to warrant recovery thereunder which may be barred by some statute of limitations should not be indulged in the absence of facts appearing upon the trial after the defenses upon which defendants rely have been presented by proper pleading and proof (*Schenck* v. *State Line Telephone Co.,* 238 N. Y. 308; *Clark* v. *Kirby,* 243 N. Y. 295)."

Were our holding otherwise, the purpose of the suretyship relationship would be thwarted and the plaintiff unprotected against the very misconduct from which it sought protection by the purchase of the bonds.

Implicit in the duties of the Treasurer was complete integrity. Her breach, as alleged in the complaint, entailed dishonesty, her concealment of which created the problem with which we are confronted. Honesty or its antithesis was surely within the contemplation of the parties to the suretyship contract. The very nature of the obligation assumed by both principal and surety is bottomed upon trust and fidelity, and the risks implicit in protecting against a violation of trust must contemplate the possibility of clandestine conduct. The condition of the obligation assumed by the surety was the faithful performance of duty by the Village Treasurer and the breach of the contract could not occur without a default on the part of the principal.

We are thus led to a consideration of the doctrine of fraudulent concealment, which we hold applicable. By its operation the Statute of Limitations does not begin to run at the commission of the breach since this complaint may be construed to implicate the Treasurer in conduct intended to prevent plaintiff's acquisition of information disclosing the cause of action, but is tolled until plaintiff discovers, or should have discovered, the Treasurer's defalcation. (See Note, 72 Yale L. J. 600.) The doctrine applies to all claims including those for tort or breach of contract. (See *Lightfoot* v. *Davis,* 198 N. Y. 261; *Miller* v. *Wood,* 116 N. Y. 351; *Dodds* v. *McColgan,* 229 App. Div. 273; *Clarke* v. *Gilmore,* 149 App. Div. 445.) We are not unmindful that there is some question whether the doctrine applies in this State in every case, nor do we decide that issue. (See, e.g., *Guild* v. *Hopkins,* 271 App. Div. 234.)

It has been said that the doctrine is recognized in *Dodds* v. *McColgan* (*supra*) (see Dawson, Fraudulent Concealment and Statutes of Limitation, 31 Mich. L. Rev. 875, 877, n. 6). It has

also been held that the doctrine is not applicable in New York except insofar as it is recognized by subdivision 5 of section 48 of the Civil Practice Act (*Moviecolor, Ltd.* v. *Eastman Kodak Co.*, 288 F. 2d 80, cert. denied 368 U. S. 821; cf. *Atlantic City Elec. Co.* v. *General Elec. Co.*, 207 F. Supp. 613). Williston asserts that the rule supported by the great weight of authority is that fraudulent concealment is a good reply to the plea of the Statute of Limitations (6 Williston, Contracts [Rev. ed.], §§ 2016–2017, pp. 5664–5667; see, also, Restatement, Security, § 121 and 50 Am. Jur., Suretyship, § 184, p. 1624). A narrower view is that in order to support an extension of the period for fraud, the fraud must be the basis for the action and fraudulent concealment of a cause is not of itself sufficient. Williston cites in support of the latter position *Price* v. *Mulford* (107 N. Y. 303) and *Brick* v. *Cohn-Hall-Marx Co.* (276 N. Y. 259). These New York cases are distinguishable. In *Price* v. *Mulford,* the action was for money had and received and there was no fraud of any kind or facts from which fraud on the part of Mulford might be implied. In the *Brick* case, the basis of the action was the contract between the parties relating to the payment of royalties without which there could be no claim at all and the fraud alleged amounted to a breach of the contract in the same manner as would a refusal to pay. The law of suretyship was not involved. Moreover, the instant case is not one where the plaintiff attempts to escape the application of the Statute of Limitations by clothing the action in fraud while essentially it is for breach of a written contract. Here its base is the fraud of the principal. (See *Griffel* v. *Belfer,* 12 A D 2d 609.)

The surety relies upon *People* v. *Corcillo* (276 App. Div. 675) but that case merely held that although the bonds may be given pursuant to statute, an action thereon may not primarily be for violations of the statute but rather for a violation of the terms of the bond and, accordingly, is an action on a contract within the meaning of subdivision 1 of section 48 of the Civil Practice Act and not an action upon the statute for a forfeiture or penalty to the State within the meaning of subdivision 2 of section 50 of the Civil Practice Act. Our position is succinctly expressed in *McMullen* v. *Loan Assn.* (64 Kan. 298, 308): " So, here, the surety guaranteed the honesty and faithfulness of McMullen, and promised to make good his defaults, and there is no good reason why the surety should be relieved of liability for the dishonesty of the secretary when by reason of the same dishonesty the liability was covered up. We think the liability of the surety depends upon the liability of the principal."

As to the nature of the official bond, i.e., whether it creates a primary contractual obligation governed by the Statute of Limitations relating to actions on written contracts (usually six-year period) or whether it constitutes only collateral security for the performance of the officer's duty and is governed by the appropriate statute applicable to the particular tort of the principal (usually shorter period applicable to tort), we are not concerned except insofar as recent cases recognize that, as to the obligee on the bond, the liability of both the principal and the surety is primary and coextensive (see Ann. 18 A. L. R. 2d 1179, 1189).

We do not, of course, in this appeal reach the question of whether the village had more than ample opportunity to discover the defalcation, as argued by the defendant. There was no positive duty imposed upon the village to keep so close a watch on the conduct of the Treasurer that fraud could not be committed. Where there was nothing in the record to show that the fiduciary did not have a good reputation for honesty, it was held in *McMullen* v. *Loan Assn.* (*supra*) that because the books of the office holder were open to inspection and the obligee failed to detect defaults which a close examination might have disclosed did not defeat a recovery on the bond, if the obligee acted in good faith toward the surety. Whether the village had delayed too long in pursuing its claims is a question of fact. When the fraud, if any, was discovered or should have been discovered can only be resolved by a trial of the issues (*Myers* v. *Paulus*, 10 A D 2d 762).

By asserting the principle here stated we are not changing the duration of the period of limitations, concededly a matter for the Legislature. On the other hand, Statutes of Limitation are entitled to obeisance but they are not sacrosanct in the sense that they may never be held in abeyance, even for the sake of achieving justice. No better explanation for their purpose and no closer application to this case may be found than in the language of Mr. Justice Miller in *Bailey* v. *Glover* (21 Wall. [88 U. S.] 342, 349) when he said: " They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

Similarly, we are not judicial automatons who must function only when the niceties of pleading and all its technical aspects are scrupulously observed. The wording of the complaint herein or the failure to join the principal as an adversary should not defeat the plaintiff at this stage of the action for legal relationships do not depend upon semantics or strategy. This is not to de-emphasize the virtues of good pleading, but there are times when inadequacies must be overlooked for the sake of justice. We must treat the Statute of Limitations as we do every other legal right, whether created by statute or common law, i.e., not in any manner of ignoring or abrogating the statute but in particular cases holding that it is unjust to allow a party to exercise the technical right (*Gibbs* v. *Guild*, 9 Q. B. D. 59, 65; 6 Williston, Contracts [Rev. ed.], § 2015, p. 5663).

In my judgment therefore, the complaint seeks relief based upon what may be tantamount to actual fraud, that the doctrine of fraudulent concealment is applicable and that on this motion a timely cause of action has been spelled out against the surety.

WILLIAMS, P. J., BASTOW, HALPERN and HENRY, JJ., concur in the *Per Curiam* opinion; GOLDMAN, J., concurs in a separate opinion.

Order insofar as appealed from unanimously affirmed, without costs of this appeal to either party.